33 P.3d 906 (2001)
131 N.M. 156
2001-NMCA-076
STATE of New Mexico ex rel. PUBLIC EMPLOYEES RETIREMENT ASSOCIATION, Plaintiff-Appellant,
v.
Lawrence LONGACRE, Defendant-Appellee.
No. 20,787.
Court of Appeals of New Mexico.
August 24, 2001.
Certiorari Granted September 28, 2001.
*908 G.T.S. Khalsa, Santa Fe, NM, for Appellant.
George T. Geran, Santa Fe, NM, for Appellee.
Certiorari Granted, No. 27,135, September 28, 2001.

OPINION
BUSTAMANTE, Judge.
{1} Appellant, Public Employees Retirement Association (PERA), appeals from a summary judgment rendered in favor of Defendant/Appellee, Lawrence Longacre (Lawrence), arguing that NMSA 1978, § 10-11-4.2(A) (1997) unconstitutionally limits its ability to recover overpayments made to Maria Longacre, Lawrence's deceased spouse. We agree Section 10-11-4.2(A) violates Article IV, Section 32, of the New Mexico State Constitution and declare that it is unconstitutional.

FACTS AND PROCEDURAL HISTORY
{2} The facts of this case are not in dispute. Maria Longacre (Maria), a member of PERA, applied for and was paid disability retirement pension benefits under Option "A" from the date of her application, on August 1, 1992, to the date of her death on January 15, 1997. Option "A" does not contain a right of survivorship and is the highest pension payable. NMSA 1978, § 10-11-117(A) (1997). Throughout this time Maria was married to Lawrence. NMSA 1978, § 10-11-116(A) (1991) of the PERA Act requires that if the member is married at the time of retirement, PERA must obtain the consent of the member's spouse as to the form of payment and beneficiary selected before the designation is effective. Id.
{3} Lawrence's consent was not obtained when Maria elected Option "A" on her retirement pension application and the parties agree that this infirmity rendered the election void. As a result, Lawrence, as Maria's surviving spouse, is eligible, by operation of law, for the payment of survivor pension benefits under Option "C". Section 10-11-116(A)(2). The error was not discovered during her lifetime, and Maria was overpaid benefits under Option "A" in the amount of $7537.90.
{4} An administrative hearing was held before the PERA Board on March 30, 1998, to consider a request by Lawrence, as Maria's survivor beneficiary, for benefits under Option "B". During this administrative hearing, PERA raised the issue of overpayments *909 to Maria, and whether PERA was limited to recovering only one year of overpayments, pursuant to Section 10-11-4.2(A) of the PERA Act. PERA argued that Section 10-11-4.2(A) unconstitutionally limited recovery to only one year of overpayments, but pointed out that the PERA Board did not have authority to decide the constitutionality of its statutes. On October 28, 1998, the PERA Board issued a decision that granted Lawrence benefits under Option "C" and limited PERA to recovering one year of the overpayments made to Maria.
{5} PERA filed a declaratory judgment action in district court on November 25, 1998, challenging the constitutionality of Section 10-11-4.2(A) under Article IV, Section 32 of the New Mexico State Constitution. The parties filed cross motions for summary judgment. On August 25, 1999, the district court denied PERA's motion for summary judgment and granted Lawrence's cross motion. This appeal followed.

DISCUSSION

A. Standard of Review
{6} We start our inquiry with the presumption that legislative acts are constitutional. City of Farmington v. Fawcett, 114 N.M. 537, 540, 843 P.2d 839, 842 (Ct.App.1992). It is the duty of an appellate court to uphold a statute unless it is satisfied beyond reasonable doubt that the challenged legislation is unconstitutional. Id.; see also Espanola Hous. Auth. v. Atencio, 90 N.M. 787, 788, 568 P.2d 1233, 1234 (1977) (holding statute is upheld unless the court is satisfied beyond all reasonable doubt that the challenged legislation violates the constitution). "The burden is therefore upon the party attacking the constitutionality of the enactment to show that the act is invalid." City of Farmington, 114 N.M. at 540, 843 P.2d at 842; see also City of Albuquerque v. Jones, 87 N.M. 486, 488, 535 P.2d 1337, 1339 (1975).

B. Constitutionality of Section 10-11-4.2(A)
{7} PERA was established by the Public Employees Retirement Act, NMSA 1978, §§ 10-11-1 to -141 (1987, as amended through 1999), as a state agency responsible for administering the retirement program for its qualified members. Rainaldi v. Pub. Employees Ret. Bd., 115 N.M. 650, 651, 857 P.2d 761, 762 (1993). The PERA Board holds all funds in the PERA system in trust for its members. N.M. Const. art. XX, § 22; NMSA 1978, § 10-11-123(B) (1987); NMSA 1978, § 10-11-130(A) (1997). As trustee of the fund, and fiduciary to PERA members, the Board has a duty to collect overpayments for the trust. N.M. Const. art. XX, § 22; Restatement (Second) of Trusts § 254, at 637-38 (1959). Following the principles of trust law, the PERA Board has, by regulation, directed the Executive Director of PERA to "make all reasonable efforts to collect any pension overpayment made for any reason." 2 NMAC 80.800.8.1.
{8} Section 10-11-4.2(A) limits the amount PERA can collect, apparently regardless of the reason for overpayment. The statute provides:
If an error or omission results in an overpayment to a member or beneficiary of a member, the association shall correct the error or omission and adjust all future payments accordingly. The association shall recover all overpayments made for a period of up to one year prior to the date the error or omission was discovered.
PERA asserts that, by enacting Section 10-11-4.2(A), the legislature violated the clear and unambiguous language of Article IV, Section 32, of the Constitution of New Mexico, which states:
No obligation or liability of any person, association or corporation held or owned by or owing to the state ... shall ever be exchanged, transferred, remitted, released, postponed or in any way diminished by the legislature, nor shall any such obligation or liability be extinguished except by the payment thereof into the proper treasury, or by proceeding in court.
{9} The words of constitutions are interpreted by giving words their plain, natural, and usual significance. City of Farmington, 114 N.M. at 544, 843 P.2d at 846. "If the language of the constitution is plain, definite, and free from ambiguity, the intent is to be found in the instrument itself." Id. Interpretation of a constitution, like a statute, is *910 an issue of law, subject to de novo review. State v. Cleve, 1999-NMSC-017, ¶ 7, 127 N.M. 240, 980 P.2d 23. In addition, the constitution is interpreted "to carry out its spirit, avoiding legal technicalities and subtle niceties." State ex rel. Udall v. Colonial Penn Ins. Co., 112 N.M. 123, 128, 812 P.2d 777, 782 (1991).
{10} Article IV, Section 32 has been construed by New Mexico appellate courts several times. Early New Mexico cases focused their analysis on whether or not the claim involved was an "obligation or liability" owed the state. Starting with this early case law, New Mexico courts declined to draw nebulous distinctions between various kinds of property interests in determining what constitutes an obligation or liability subject to Article IV, Section 32.
{11} For example, in Asplund v. Alarid, 29 N.M. 129, 219 P. 786 (1923) the plaintiff, suing as a taxpayer, challenged a statute that exempted from taxation certain property owned by honorably discharged veterans. Id. at 137, 219 P. at 789. In addition to providing an exemption in the future, the act was made retroactive and applied to taxes that had already accrued. Id. at 133, 219 P. at 787. The Court held that the legislature was "without power" to exempt taxpayers from taxes once the taxes had matured into a liability. Id. at 138, 219 P. at 789; see also Bd. of Educ. v. McRae, 29 N.M. 85, 88, 218 P. 346, 347 (1923) (repealing tax law cannot have the effect of relieving tax liability during the year the repealing statute went into effect); State v. State Inv. Co., 30 N.M. 491, 500-02, 239 P. 741, 744-46 (1925) (settling suits for disputed taxes for amounts less than the amount claimed to be owing does not violate State Constitution).
{12} In this same vein, New Mexico appellate courts have consistently held that obligations and liabilities owed the state can be forgiven or compromised only if there is a good faith dispute as to the amount owed. See id.; Lyle v. Luna, 65 N.M. 429, 437-39, 338 P.2d 1060, 1065-66 (1959); White v. Sutherland, 92 N.M. 187, 191, 585 P.2d 331, 335 (Ct.App.1978); Gutierrez v. Gutierrez, 99 N.M. 333, 335, 657 P.2d 1182, 1184 (1983); see also N.M. Att'y Gen. Op. 71-16 (1971). In this case there is no dispute that PERA overpaid disability pension benefits to Maria in the amount of $7537.90. It also bears noting that Lawrence does not argue to us that he or Maria were misled in any way by PERA. In fact, the record before us reveals nothing about how or why the option designation error first occurred.
{13} We do not think it can be seriously questioned that in common parlance an overpayment of retirement benefits would be an "obligation or liability" within the framework of the Public Employees Retirement Act. Retirees are entitled to benefits under the appropriate option, but no more. Excess payments do not belong to the retiree. Rather they belong to the trust to be used for the benefit of all retirees, and they should be reimbursed to PERA. We perceive no escape from the conclusion that the responsibility to reimburse overpayments is an "obligation or liability ... owned by or owing to the state" as those words are used in Article IV, Section 32. The unambiguous and intended effect of Section 10-11-4.2(A) is to release retirees of their responsibility to repay anything more than one year of excess benefits received. While we certainly do not question or quarrel with the legislature's apparent concern for the financial well-being of retirees, we are forced to conclude that the method chosen by the legislature is not allowed by Article IV, Section 32.
{14} Lawrence asserts two arguments attempting to demonstrate why this resolution is not appropriate. Lawrence's principal argument is that Article IV, Section 32 "explicitly applies only to currently-due or currently-existing obligations to the State, not any obligation scheduled to come into existence in the future." Thus, he argues that the Constitution only prohibits forgiveness of overpayments accrued from the time Maria began to receive benefits on August 1, 1992, to April 6, 1993, the date Section 10-11-4.2(A) was adopted. Lawrence asserts that overpayments made after the enactment of Section 10-11-4.2(A) were not debts "held or owned by or owing to the state" when the statute took effect. These overpayments, then, are not subject to Article IV, Section 32 *911 because they did not exist at the time of this legislative act.
{15} Lawrence argues in this regard that after adoption of Section 10-11-4.2(A), no matter how long overpayments continue, no obligation or liability is created in the retiree except for the one-year period defined by the statute. The effect of accepting Lawrence's argument would be to say that Section 10-11-4.2(A) redefined the benefits payable under PERA.
{16} Lawrence relies on Asplund and McRae as authority for this argument. Asplund and McRae dealt with the constitutionality of forgiving assessed taxes. See Asplund, 29 N.M. at 131, 219 P. at 787; McRae, 29 N.M. at 86-87, 218 P. at 346. Lawrence's reliance on these cases is misplaced. We, of course, agree that the legislature may eliminate or reduce a tax, as long as it only changes the tax structure prospectively. See N.M. Att'y Gen. Op. 91-14 (1991) (stating that there is no future tax debt because the obligation to pay is solely a function of the statutory taxing scheme). However, pension overpayments are not analogous to changes in tax statutes.
{17} In enacting Section 10-11-4.2(A), the legislature did not amend or change any of the underlying retirement benefits or the method by which benefits, including Options "A" or "C", are calculated. We fail to see how Section 10-11-4.2(A) can be deemed to prevent pension overpayments from becoming liabilities or obligations owed to the State. To state the obvious, retirees have no legal right to receive benefit overpayments.
{18} Once an overpayment is discovered, Section 10-11-4.2(A) is applied retroactively to preclude collection of more than one year of overpayments. Section 10-11-4.2(A) is not a static statute designed for a single episode of impact. It is a dynamic statute designed to have effect after its enactment. Section 10-11-4.2(A) cannot be applied without diminishing an obligation or liability owed to the State, and that is why it is in conflict with Article IV, Section 32.
{19} To interpret Article IV, Section 32 as applying only to debts existing when the legislature acts neglects the full import of the language of the provision itself. As a general rule, we will not read words into a statute or constitutional provision when it makes sense as written. Las Cruces TV Cable v. N.M. State Corp. Comm'n (In re Generic Investigation Into Cable Television Servs.), 103 N.M. 345, 349, 707 P.2d 1155, 1159 (1985). Equally, we should not construe any part of a statutory or constitutional provision so as to render it meaningless or superfluous. Denish v. Johnson, 1996-NMSC-005, ¶ 37, 121 N.M. 280, 910 P.2d 914. Article IV, Section 32 states that "No obligation or liability ... shall ever be" affected by legislative action. (Emphasis added.) Giving the word "ever" its plain, natural, and usual significance as constitutional interpretation requires, City of Farmington, 114 N.M. at 544, 843 P.2d at 846, broadens the coverage of the constitutional provision. Webster's Third New International Dictionary 788 (1993) defines the adverb "ever" to signify "at all times," "at any period or point of time," and "through an indefinite time." Lawrence's interpretation prohibits application of Article IV, Section 32 to overpayments received after Section 10-11-4.2(A) took effect. His interpretation renders the word "ever" surplusage in the constitutional provision in contravention of the basic canons of constitutional interpretation. Therefore, we interpret the word "ever" to indicate the applicability of Article IV, Section 32 to obligations owed to the State regardless of the time the obligation was incurred.
{20} Lawrence also argues that Section 10-11-4.2(A) is an ordinary statute of limitations applied to the state and that it does not discharge the liability owed, but merely limits the amount of overpayments PERA can recover to a reasonable period. In State v. Montoya, 32 N.M. 314, 317, 255 P. 634, 635 (1927), our Supreme Court addressed a similar argument in support of a similar statute. In Montoya the state was trying to collect taxes based on an 1897 assessment. The taxpayer interposed in response a statute passed in 1921 which created a presumption that all taxes accrued on property prior to January 1, 1910, had been paid. The statute also discharged all liens *912 imposed for such taxes and imposed a duty on county treasurers to "mark such taxes paid." Id. at 315, 255 P. at 634. The Court held that the release of liens portion of the statute could be enforced but that the release of personal liability for the taxes offended Article IV, Section 32.
{21} The taxpayer urged that if the statute could not be sustained as a discharge or remission of taxes because of Article IV, Section 32, it should be upheld as a statute of limitations, or of repose. Montoya, 32 N.M. at 317, 255 P. at 635. In response to this argument the Court stated:
We fail to discover in this statute, however, the earmarks of an ordinary statute of limitations. A statute which merely bars the remedy is one of repose. It forbids the preferring of stale claims as matter of public policy. But this state is one of presumption of payment, and directs the county treasurers to make record of actual payment. It does not act prospectively as statutes of limitations do. It acts only retrospectively. It allows no time within which the state may proceed on these old taxes before the bar is to fall, as statutes of limitations must do which are to affect private contract obligations. The plain purpose and necessary effect of this section is to remit and release tax obligations. If the Legislature may remit and release them when 11 years old, it may do so when they are but 3 years old. So we doubt the correctness of classifying section 474 as a limitation statute. But the name or classification of the statute does not matter. It is the effect that condemns it. Admitting that it has done nothing more than to bar the remedy, leaving the obligation or liability intact, to be enforced if perchance a future Legislature should repeal section 474, yet the effect has been at least to "postpone" the obligation or liability-result equally obnoxious to the Constitution.
Id. at 317-18, 255 P. at 635.
{22} We can add very little to these observations. Section 10-11-4.2(A) does not look or operate like a statute of limitations or a statute of repose. For example, statutes of limitations typically allow a certain period of time within which to commence an action in the courts for enforcement of an obligation. NMSA 1978, §§ 37-1-1 to -30 (1880, as amended through 1995) (Article 1, Limitations of Actions). Also, statutes of limitations typically do not place limitations on the amount of the recovery so long as the filing deadline is met. To the contrary, Section 10-11-4.2(A) limits recovery to one year of overpayments and places no limit whatsoever on the time within which PERA must act.
{23} Further we fail to see how Section 10-11-4.2(A) serves to further the purpose of all statutes of limitation: protection of defendants from stale claims while providing an adequate period of time for persons of ordinary diligence to act on their claims. Garcia on Behalf of Garcia v. La Farge, 119 N.M. 532, 537, 893 P.2d 428, 433 (1995). The difficulties inherent in pursuing stale claims arising primarily from loss of evidence and fading memories are not likely to be present in this context. Once a mistake is discovered, the reason for the error and calculation of the overpayment should be readily available from PERA's own files.
{24} Analyzing Section 10-11-4.2(A) as a statute of repose is not fruitful either. Statutes of repose generally operate to put an end to liability after the passage of a set period of time measured from a defined event. Id. Statutes of repose cut off liability regardless of whether claims have ripened or-if ripe-have been discovered by the plaintiff. Id. Section 10-11-4.2(A) in contrast does not ground its time prior to repose on the most logical event; that is, at retirement when the error in option selection occurs and PERA's claims become justiciable. Instead it counts backwards from the date the error is discovered. Lawrence thus proposes a statute of repose which is triggered and measured by discovery of the claim by PERA. This is an odd way to craft a statute of repose, to say the least, and we do not believe the legislature intended to craft a statute of repose as the term is normally understood.
{25} On balance, we believe Section 10-11-4.2(A) lends itself most naturally to interpretation as a forgiveness of debt rather than a statute of limitations of any kind.
*913 {26} The dissent rests on three broad grounds. First, it generally agrees with Lawrence's two arguments, though it conflates them in a way Lawrence does not. We have fully responded to Lawrence and need say no more on this count.
{27} Second, it makes a fairness argument which is not supported by the record and which Lawrence does not make. As we have noted, Lawrence has not asserted in this Court any theory of bad faith or wrongful conduct on the part of PERA and thus, he has not made any kind of estoppel argument against PERA to us. Wisznia v. State Human Servs. Dep't, 1998-NMSC-011, ¶ 17, 125 N.M. 140, 958 P.2d 98 ("noting that [e]stoppel is rarely applied against the [s]tate and then only in exceptional circumstances where there is a shocking degree of aggravated and overreaching conduct"); Green v. N.M. Human Servs. Dep't, 107 N.M. 628, 629, 762 P.2d 915, 916 (Ct.App.1988) (holding that estoppel normally requires showing of (1) conduct amounting to false representation as concealing of facts, (2) knowledge or constructive knowledge of true facts, and (3) an expectation or intent that the other party will rely and act on the representations made). The out-of-state authorities the dissent cites are estoppel theory cases that are simply not relevant to the resolution of this case.
{28} The second facet of the dissent's fairness argument is similarly unsupported. The dissent assumes that the error was entirely PERA's fault. While that may be so, there is nothing in the record before us to support that assumption. It is not appropriate for this Court to make decisions of this kind based on speculation.
{29} We readily agree that in any individual case PERA is better able to absorb any loss. And, again, we do not question the legislature's motives in attempting to help retirees. However, neither of these can be controlling factors in resolving an issue of constitutional interpretation. See State v. Nunez, 2000-NMSC-013, ¶ 47, 129 N.M. 63, 2 P.3d 264 (noting that legislature's benign intent cannot cure constitutional violation).
{30} Finally, the dissent asserts that Section 10-11-4.2(A) does not violate the underlying purpose of Article IV, Section 32 which is to "prevent favoritism or relief to people who do not deserve it." (Dissent ¶ 37). We agree that that is one of the purposes of Article IV, Section 32, but it is not its only purpose and that is not the only use to which it has been put. It is difficult to conceive of persons more worthy than our war veterans, yet Article IV, Section 32 was applied to prevent the legislature from granting them tax relief for a single year following World War I. See Asplund, 29 N.M. at 133-34, 219 P. at 787-88. Asplund illustrates why the dissent's use of a purposive interpretative model to the exclusion of-or to trump-actual language is problematic. It is clearly not appropriate in this context.

CONCLUSION
{31} We hold Section 10-11-4.2(A) is unconstitutional in violation of Article IV, Section 32 of the New Mexico Constitution.
{32} IT IS SO ORDERED.
I CONCUR: JAMES J. WECHSLER, Judge.
IRA ROBINSON, Judge (dissenting).
ROBINSON, Judge (dissenting).
{33} I respectfully dissent. This case is a good example of the unfairness that results from PERA's position. Mrs. Longacre selected an option for her retirement fund that required her husband's signature as consent, but Mr. Longacre's signature was never obtained. There is no evidence of fraud on the part of the Longacres. It would seem that PERA should have caught such an obvious error when the form was turned in, but did not.
{34} It is reasonable to assume that for any one application that a state employee fills out and reviews in his or her lifetime, a PERA staffer will see and review hundreds and perhaps thousands. It is also reasonable to assume that the PERA staff is in charge of its own paperwork and familiar with the processing of a state employee's application paperwork. Now PERA accepts no responsibility for its error, presents Mr. Longacre with a large bill after his wife has died and *914 years after the money Mrs. Longacre received has presumably been spent, and argues that the New Mexico Constitution provides support for this inequitable result. I cannot accept that argument.
{35} In my view, the legislature acted constitutionally to address the unfairness that results when PERA is allowed to recover overpayments without limitation. Section 10-11-4.2 is properly characterized as a statute of repose, rather than a statute of limitations, because it limits the remedy, instead of providing that a cause of action must be filed within a certain time period. See Cummings v. X-Ray Assoc. of N.M., 121 N.M. 821, 834-35, 918 P.2d 1321, 1334-35 (1996); Montoya, 32 N.M. at 317, 255 P. at 635 (a statute that merely bars the remedy is one of repose). I believe that Section 10-11-4.2(A) is constitutional because the legislature may properly create a statute of repose for overpayments that have not yet accrued. Article IV, Section 32, provides that when the obligation or liability is "held or owned by or owing to the state," it cannot be "extinguished" by the legislature. "Held or owned by or owing to the state" connotes a requirement that the debt is already fixed and definite. Furthermore, a debt must exist before it can be "extinguished." Article IV, Section 32, read as a whole, supports a conclusion that there is no constitutional violation unless the debt is already fixed and definite at the time the legislature seeks to extinguish it.
{36} I see nothing unconstitutional about a law that limits PERA's ability to collect future overpayments caused by PERA's own error. The legislature has the power to enact statutes of repose and of limitation. See Cummings, 121 N.M. at 827-836, 918 P.2d at 1327-36; Jaramillo v. State, 111 N.M. 722, 725, 809 P.2d 636, 639 (Ct.App.1991). Section 10-11-4.2 is presumed valid, and PERA bears the burden of proving it unconstitutional. See City of Albuquerque v. Jones, 87 N.M. 486, 488, 535 P.2d 1337, 1339 (1975). I do not believe PERA has met its burden to overcome the presumption of validity. Future overpayments, not yet in existence, are not "obligations" or "liabilities." It is undisputed that at the time the legislature passed Section 10-11-4.2, Mrs. Longacre had been overpaid $969.76. I agree that the existing overpayments of $969.76 could not be forgiven. But the rest of the overpayments, totaling $6566.14, had not yet occurred. I agree with Longacre that at the time the legislature passed Section 10-11-4.2(A), the bulk of the overpayments in this case had not yet occurred, and consequently were not yet "held or owned by or owing to the state." Consequently, the legislature could constitutionally limit PERA's ability to collect overpayments that had not yet occurred.
{37} The purpose of Article IV, Section 32 is to prevent legislative mischief in relieving people of debts that are fixed and definite. It is intended to prevent favoritism or relief to people who do not deserve it. To the extent the statute in question deals with overpayments that have not yet accrued, I do not believe it violates the constitutional prohibition in Article IV, Section 32, or its underlying purpose. This case is more like cases in which the legislature acts to affect liabilities, not yet due, that will become due in the future. For example, the legislature can constitutionally alter a tax rate applicable in the future. See N.M. Att'y Gen. Op. No. 91-14. It could be said that Article IV, Section 32 has redefined the notion of debt owed to the state.
{38} The majority is concerned with the impact of the word "ever" in Article IV, § 32, essentially saying that "No obligation or liability of any person, ... held or owned by or owing to the state, ... shall ever be ... diminished by the legislature." In my reading of this constitutional provision, the word "ever" does not have any force or effect until a debt, "obligation or liability" has reached the stage where it is held or owned by or owing to the state. For the vast majority of PERA's overpayments to Longacre, this had not yet happened at the time the statute took effect.
{39} This case is distinguishable from cases, relied on by the majority, in which the legislature has attempted to relieve taxpayers from taxes that are already due and owing. See e.g., Asplund, 29 N.M. 129, 132-33, 219 P. 786, 787 (legislature could not forgive taxes after they had become a fixed and definite liability); McRae, 29 N.M. at 88, *915 218 P. at 347 (poll tax had already been levied and legislature could not act to forgive it); Gutierrez, 99 N.M. at 335, 657 P.2d at 1184 (hospital debt was already fixed and definite).
{40} Nor do I agree that Montoya, relied on by the majority, is dispositive. In Montoya, the statute commanded county treasurers to mark taxes "paid" that were already assessed but were really unpaid. Consequently, Montoya is consistent with other New Mexico cases holding that liabilities that have already accrued cannot be forgiven. Montoya is distinguishable from this case because the debt in Montoya was already fixed and definite. Montoya, 32 N.M. at 318, 255 P. at 635 (statute invalid because it sought to prevent state from recovering "judgments for taxes previously assessed"). Contrary to the majority's suggestion, our case does not involve "postponing" a debt. It involves the legislative power to create a statute of repose limiting actions to collect overpayments that will arise in the future, but are not yet in existence.
{41} To the extent Section 10-11-4.2 deals with overpayments that, as of the statute's effective date in 1993, had not yet occurred, I believe it is constitutional. It is within the legislature's power to craft statutes of limitation, Jaramillo, 111 N.M. at 725, 809 P.2d at 639, and I do not believe PERA has demonstrated that the statute is unconstitutional. It is not for us to pass on the wisdom of legislative acts, Madrid v. St. Joseph Hosp., 1996-NMSC-064, ¶ 10, 122 N.M. 524, 928 P.2d 250, but the equities underlying this statute are strong. PERA admitted at oral argument that under its theory it can go back fifty or one hundred years to collect overpayments, without any limitation whatsoever. Under the majority's holding, PERA is allowed to impose undue hardship on families years and even decades after the money received by the retiree has been spent. Additionally, accepting PERA's argument means there is no limitation on its actions and no requirement that it act diligently. PERA, on discovering an overpayment, could also wait years before seeking to collect it. Moreover, in this case, there is not a shred of evidence that the Longacres engaged in fraud or misled PERA in any way. It was PERA's error that resulted in overpayments. PERA never questioned the form submitted by Mrs. Longacre and for years mailed what it now claims are incorrect checks. Presumably, the Longacres considered the payments correct and spent the money. Under the circumstances, I do not think it is appropriate to hold that our New Mexico Constitution shields PERA from its error. Cf. Gonzales v. Pub. Employees Ret. Bd., 114 N.M. 420, 425-28, 839 P.2d 630, 635-38 (Ct.App.1992) (equitable estoppel can be applied against the PERA board); Eldredge v. Utah State Ret. Bd., 795 P.2d 671, 675-78 (Ut.Ct.App.1990) (Retirement Board estopped from reducing benefits where it misled retiree by telling him he did not have to purchase prior years of service); Indursky v. Pub. Employees' Ret. Sys., 137 N.J.Super. 335, 349 A.2d 86, 91 (1975) (Board demanded that retiree pay $5302.32 as overpayment for a six-year period; Board was estopped from recovering the overpayments because of "lack of diligence" on Board's part, and requiring retiree to repay would be "inequitable"); but see, Office of Personnel Management v. Richmond, 496 U.S. 414, 424-34, 110 S.Ct. 2465, 110 L.Ed.2d 387 (1990) (equitable estoppel not applied in favor of a retired Navy employee because Appropriations Clause precluded any payment that did not comply with the applicable statutory condition); Romano v. Ret. Bd. of Employees' Ret. Sys., 767 A.2d 35, 36-43 (R.I.2001) (holding that estoppel is not available against government retirement board where the representations by the board's employees were in conflict with law and ultra vires).
{42} For these reasons, I have concluded that the risk of overpayments should be placed upon PERA, and not the retiree.
{43} Finally, I am concerned that the majority's holding provides a foundation for an argument that tax amnesty programs are also unconstitutional.
{44} For these reasons, I dissent.