Certiorari Denied, September 23, 2010, No. 32,561

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2010-NMCA-099**

**Filing Date:  July 22, 2010**

**Docket No. 29,456**

**EDWARD VILLA,**

> **Worker-Appellee,**

**v.**

**CITY OF LAS CRUCES,**
**self-insured,**

> **Employer/Insurer-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**Helen L. Stirling, Workers' Compensation Judge**

Rod Dunn
Rio Rancho, NM

for Appellee

Holt Babington Mynatt P.C.
Catherine Quinones
Las Cruces, NM

for Appellant

**OPINION**

**SUTIN, Judge.**

**{1}**     City of Las Cruces (Employer) appeals from a workers' compensation judge's (WCJ) compensation order awarding Edward Villa (Worker) disability benefits.  The issue is whether Worker's on-the-job intoxicated state barred him from recovery under the Workers' Compensation Act (the Act).  The issue requires us to consider the meaning and application of two sections of the Act, namely, NMSA 1978, Section 52-1-11 (1989), under which the

1

intoxication would completely bar Worker's recovery, and NMSA 1978, Section 52-1-12.1 (2001), under which Worker would receive 90% of his entitlement even though he was intoxicated. Resolution of the issue revolves around the different causation wording in the statutes. We are met with statutory ambiguity that forces us to choose between two undesirable results. We affirm, holding that the WCJ properly applied Section 52-1-12.1, given the substantial evidence that supported a contributing cause to Worker's injury, in addition to Worker's intoxication. We also hold that the WCJ properly held Section 52-1-11 inapplicable to bar recovery because there was substantial evidence to support the WCJ's factual determination that Worker's injury was not "willfully suffered" by him.

## A.    BACKGROUND

### 1.    Factual Background

**{2}**    We take the facts from the WCJ's findings of fact. On the accident date, Worker's job was to operate a garbage truck. He did not clock in as he was supposed to when he arrived at work probably between 4:00 and 4:30 a.m., but instead he went directly to drive the truck. At one point during his work, when Worker was picking up a dumpster with the truck forks, the dumpster slipped from the forks and fell into the truck hopper. To pull the dumpster from the truck, Worker and his supervisor, Jim Maese, climbed up on the truck on opposite sides to attach chains to the dumpster so that a grappler, operated by Fred Tarango, could pull the dumpster out. As he started to reach across to hand his end of the chain to Maese, Worker lost his balance on the narrow ledge on which he was standing and he fell to the ground, seriously injuring himself. The accident happened at about 5:45 a.m.

**{3}**    The day before the accident, after Worker completed his work shift, Worker and a co-worker went to Worker's house with a twelve-pack of beer that the two shared; they later went to a river where they finished the beer. Worker was then dropped off at a bar where he had at least one or two more beers, after which he was driven home. The morning of the accident, the same co-worker who was with Worker the night before picked Worker up, and they went to work.

**{4}**    After the accident, at about 9:30 a.m., Worker's blood was drawn and tested at a hospital. The blood-test results showed that Worker's blood-alcohol level was .12, which was well over the New Mexico legal driving limit. Further, the hospital records indicated that alcohol was smelled on Worker's breath. The WCJ found that the evidence showing Worker's voluntary intoxication was abundant. The evidence included Worker's testimony and deposition admissions in regard to his alcohol intake, the co-worker's testimony, Worker's failure to clock in so that he would avoid seeing supervisory personnel, and the smell of alcohol on his breath at the hospital. The WCJ stated that she had "no doubt but that Worker was legally drunk in accordance with DWI standards both when he started work and at the time of the accident."

2

**{5}**     However, in assessing Worker's intoxication for the purposes of recovery of benefits, the WCJ also considered the following.  Worker had been driving the garbage truck the morning of the accident for at least an hour before the accident and evidently had not hit anything; he had been walking round the top of the truck before Maese arrived and had no difficulty; Tarango did not notice a problem with Worker's demeanor; and Worker evidently was able to climb up on the truck in the presence of Maese and Tarango neither of whom noticed anything amiss.

**{6}**     The WCJ "[could] only conclude" that Worker was still under the influence of alcohol when he started work on the day of the accident, when the accident occurred, and when he was treated after the accident at the hospital.  Yet the WCJ also found that "[t]he fact that Worker was inebriated . . . does not resolve the legal effect of it on his claim for . . . benefits."  This finding moves us into consideration of the two statutes in question relating to an intoxicated worker's recovery of benefits and the WCJ's rationale for determining that Worker was not completely barred from recovery and was limited to a 90% recovery.

## 2.     The WCJ's Legal Analysis

**{7}**     In her findings and conclusions, the WCJ set out her analysis of how the law applied to the fact of Worker's intoxication and of the causal relationship of the intoxication to his accident and injury.  The WCJ first set out Section 52-1-11 in relevant part:  "No compensation shall become due or payable from any employer . . . in event such injury was occasioned by the intoxication of such worker or willfully suffered by him or intentionally inflicted by himself."  After indicating that Worker neither willfully nor intentionally injured himself, but "slipped and fell," the WCJ concentrated on the meaning and effect of the words "occasioned by."  The WCJ determined that "[t]o the extent 'occasioned by' means 'caused by,' Employer has not met it[s] burden of proving that Worker's accident was caused by his being under the influence of alcohol or intoxicated."  Acknowledging that she had no doubt as to Worker's intoxicated state, the WCJ determined that "intoxication must be the proximate cause of the accident" and that, based on evidence of Worker's conduct and what others noticed about his demeanor, "one cannot say that it was [the proximate cause]: Worker was working on a very small ledge, and anyone might have slipped off it while trying to hand his portion of the chain to Maese."  Therefore, the WCJ found that, "[g]iven all of this, one cannot conclude that the intoxication was the cause of the fall, or that the intoxication occasioned the fall."

**{8}**     After eliminating Section 52-1-11 as a bar to Worker's recovery of benefits, the WCJ turned to Section 52-1-12.1, which provides for a reduction in benefits by 10% when a person is voluntarily intoxicated and the intoxication is "a contributing cause to the injury."  The WCJ determined that under Section 52-1-12.1 the blood-alcohol test performed on Worker could not be used as evidence of intoxication to reduce benefits because the testing did not meet the standards required and did not comply with federal workplace testing procedures.  *See* § 52-1-12.1 (stating that for test results considered in determining intoxication "the test and testing procedures [must] conform to the federal department of

3

transportation procedures for transportation workplace . . . alcohol testing programs and the test [must be] performed by a laboratory certified to do the testing by the . . . department" (internal quotation marks omitted)). But the WCJ indicated that the other evidence of intoxication could be considered under Section 52-1-12.1, and thus:

> Worker's voluntary intoxication contributed to his accident and injury because, having lost his balance on the narrow ledge, were he not impaired, he very likely would have been able to catch himself, and had he not been impaired, he would have been able to complete the task of attaching the chain on his side as easily as Maese, who was not intoxicated, was able to do.

The WCJ therefore determined that the 10% reduction of benefits pursuant to Section 52-1-12.1 was appropriate.

{9}    The WCJ entered the following pertinent conclusions of law:

> 9. Worker was intoxicated . . . at the time of his accident; his accident and injury were not occasioned by his intoxication.

> 10. Worker's accident and injury were not willfully caused by him or intentionally inflicted by him.

> 11. Worker's intoxication was a contributing factor to his accident, thus entitling Employer to a [10%] reduction in Worker's compensation rate.

> 12. The blood[-]alcohol test results from Worker did not meet the requirements of Section 52-1-12.1, but were valid and reliable and admissible on other grounds, and were relevant to the adjudication of the case.

{10}    Employer appeals the WCJ's compensation order which adopted her findings of fact and conclusions of law. Employer's stated points on appeal are (1) the WCJ's conclusion of contributory causation is tantamount to a conclusion of proximate causation, such that the contrary conclusion that intoxication was not the proximate cause of the injuries constituted legal error; and (2) the WCJ erred when she did not conclude that Worker's injuries were willfully suffered by him when he climbed on top of the truck while intoxicated.

B.    DISCUSSION

{11}    We first set out Sections 52-1-11 and 52-1-12.1. We also set out NMSA 1978, Section 52-1-12 (1989), because its wording is significant in our discussion. We then address the meaning and application of the words "occasioned by" intoxication in Section 52-1-11 and "a contributing cause" to the injury in Section 52-1-12.1. Last, we address the meaning and application of the words "willfully suffered by him or intentionally inflicted by himself" in Section 52-1-11.

4

### 1.	"Occasioned By" and "a Contributing Cause"

**Standard of Review**

**{12}**	Statutory construction calls for de novo review.  *Ortiz ex rel. Baros v. Overland Express*, 2009-NMCA-041, ¶¶ 8, 23, 146 N.M. 170, 207 P.3d 1147, *rev'd on other grounds*, 2010-NMSC-021, ___ N.M. ___, ___ P.3d ___.  We review the WCJ's application of the law to the facts de novo.  *Tom Growney Equip. Co. v. Jouett*, 2005-NMSC-015, ¶ 13, 137 N.M. 497, 113 P.3d 320.  In resolving evidence-sufficiency issues, in cases arising under the Act, we engage in whole-record review to determine whether there is substantial evidence to support the result.  *Leonard v. Payday Prof'l*, 2007-NMCA-128, ¶ 10, 142 N.M. 605, 168 P.3d 177; *Tallman v. ABF (Arkansas Best Freight)*, 108 N.M. 124, 127-28, 767 P.2d 363, 366-67 (Ct. App. 1988) (explaining in more detail whole-record review), *holding modified on other grounds by Delgado v. Phelps Dodge Chino, Inc.*, 2001-NMSC-034, 131 N.M. 272, 34 P.3d 1148.

**Approach to Interpretation of the Act**

**{13}**	We recognize that the Act "reflects a deliberative balance between the interests of employers and employees," and we are to be careful when interpreting the Act not to upset that balance through unwarranted "judicial surgery."  *Ortiz*, 2009-NMCA-041, ¶ 15 (internal quotation marks and citation omitted).  We are to "read related statutes in harmony so as to give effect to all provisions."  *Id.* ¶¶ 23-24 (internal quotation marks and citation omitted).  When interpreting statutes, "[o]ur ultimate goal . . . is to ascertain and give effect to the intent of the Legislature."  *State v. Smith*, 2004-NMSC-032, ¶ 8, 136 N.M. 372, 98 P.3d 1022 (internal quotation marks and citation omitted).  In doing so, we are to apply the various principles set out by our Supreme Court in *Smith*.  *See id.* ¶¶ 9-10.

**The Statutes**

**{14}**	Section 52-1-11, which relates to intoxication, reads:

> No compensation shall become due or payable from any employer under the terms of the . . . Act . . . in [the] event such injury was occasioned by the intoxication of such worker or willfully suffered by him or intentionally inflicted by himself.

**{15}**	Section 52-1-12, which relates to drugs, reads:  "No compensation is payable . . . if the injury . . . was occasioned solely by the person being under the influence of a depressant, stimulant or hallucinogenic drug . . . or under the influence of a narcotic drug[.]"

**{16}**	Section 52-1-12.1, which relates to both intoxication and drugs, in pertinent part, reads:

The compensation otherwise payable a worker pursuant to the . . . Act . . . shall be reduced ten percent in cases in which the injury to or death of a worker is not occasioned by the intoxication of the worker as stated in Section 52-1-11 . . . or occasioned solely by drug influence as described in Section 52-1-12 . . ., but voluntary intoxication or being under the influence of a depressant, stimulant or hallucinogenic drug . . . or under the influence of a narcotic drug . . . is a contributing cause to the injury or death.

**{17}**   We read the WCJ's findings and conclusions to constitute and result in a holding that Worker's injury was not "occasioned by" his intoxication under Section 52-1-11 because it was not *the* proximate cause, meaning the sole cause, of his injury, but instead that the intoxication was no more than *a* proximate cause under Section 52-1-12.1, meaning "a contributing cause" to the injury.

**Reconciliation of the Statutes**

**{18}**   The Legislature has left the law in a bit of a lurch. What did the Legislature intend when completely barring a worker's recovery if his injury was "occasioned by" intoxication under Section 52-1-11, yet allowing a 90% recovery or stated another way, punishing the worker by 10%, when the intoxication was "a contributing cause" to his injury under Section 52-1-12.1? This perplexing question was first discussed in this Court's decision in *Ortiz*, 2009-NMCA-041, ¶ 24 n.1. We thought it appropriate to provide the following comments by way of a footnote in relation to treating methamphetamine and amphetamine use as a form of intoxication, in which event we saw "[a] conflict between Section 52-1-11 and Section 52-1-12.1." *Ortiz*, 2009-NMCA-041, ¶ 24 n.1.

Case law has interpreted the phrase "occasioned by" in Section 52-1-11 as a requirement that the employer prove that intoxication was the "proximate cause" of the accident. The uniform jury instruction on causation, UJI 13-305 NMRA, states that an act is a "proximate cause" of an injury if it "contributes to bringing about the injury." Furthermore, a proximate cause "need not be the only explanation for the injury, nor the reason that is nearest in time or place," but will be sufficient "if it occurs in combination with some other cause to produce the result." This can be interpreted to mean that the requirement in Section 52-1-11 that the injury be "occasioned by" intoxication will be met if an employer is able to show that intoxication was a contributing cause to the injury. While Section 52-1-11 provides a complete defense, Section 52-1-12.1 provides employers with a partial defense . . . when intoxication is a "contributing cause" to a worker's injury or death. Under this analysis these two statutes are irreconcilable in their results.

6

*Ortiz*, 2009-NMCA-041, ¶ 24 n.1 (citations omitted).  In regard to this irreconcilability of the statutes, we stated that it was "again leav[ing] it to the Legislature to remedy this potential conflict."  *Id.*

**{19}**    Our case law, indeed, has defined "occasioned by" as used in Section 52-1-11 to be a proximate-cause measure.  *See Estate of Mitchum v. Triple S Trucking*, 113 N.M. 85, 89-90, 823 P.2d 327, 331-32 (Ct. App. 1991) (holding that under Section 52-1-11 an employer must prove that the worker's intoxication "was a proximate cause of the resulting injury," while at the same time stating that under the statute the employer needed to show that the intoxication was "only a contributing cause").  In *Estate of Mitchum*, this Court stated that its scrutiny of Section 52-1-11 indicated that, in enacting this section, the Legislature "followed the approach taken by a majority of states requiring proof that the worker's intoxication constituted a proximate cause of his . . . injury."  *Estate of Mitchum*, 113 N.M. at 89, 823 P.2d at 331.  The Court clarified this approach by stating that "intoxication need not be shown to be the sole cause of the injury, but only a contributing cause."  *Id.*  We understand the Court to have determined that the words "injury . . . occasioned by the intoxication" in Section 52-1-11 mean that the worker's intoxication is a proximate cause of the injury and not necessarily the sole cause of the injury.  And we understand the Court to have used the words "a contributing cause" in the same vein.

**{20}**    We place no precedential value on the Court's proximate cause analysis in *Estate of Mitchum*.  *Estate of Mitchum* was decided before the enactment of Section 52-1-12.1, which explains why it did not address the language in that Section.  Because *Estate of Mitchum* essentially holds that "occasioned by" means that an employer need show "only a contributing cause," the holding cannot stand in the face of Section 52-1-12.1's almost identical language.  One can only speculate whether the Legislature borrowed either language or concept from *Estate of Mitchum* in enacting Section 52-1-12.1, or meant by enactment of Section 52-1-12.1 to say that under Section 52-1-11 an employer must prove that an employee's intoxication was something different than "a contributing cause."

**{21}**    Employer argues that two factual determinations of the WCJ critical to her ultimate determination are mutually exclusive and therefore irreconcilable. Employer points out that, on the one hand, "the WCJ found that 'having lost his balance on the narrow ledge,' were he not impaired, he would have been able to catch himself and complete the task at hand[,] concluding that Worker's intoxication contributed to his accident and injury."  Yet, Employer also points out that the WCJ, on the other hand, found that Worker's injury was not occasioned by his intoxication because anyone might have slipped off the ledge where he was working.  Thus, Employer argues, "[o]ne finding is that, but for the inebriation, Worker would have caught himself, resulting in no fall.  The other is that the inebriation added little to what was happening."

**{22}**    Employer argues through an elaborate analysis that the statutes can nevertheless be read in harmony and that the Legislature intended through Section 52-1-11 that common law proximate cause be applied.  Employer submits in its brief in chief that, applying a common

7

law proximate-cause theory, we are to distinguish proximate cause from other causes acting at the same time "through the lens of objective foreseeability," that is, by looking at "that which is objectively reasonable to expect, not merely what might conceivably occur." (Emphasis omitted.) (Internal quotation marks and citation omitted.) Thus, Employer continues, we are to distinguish between causal factors that pass the objectively reasonable-foreseeability test ("proximate contributing causal factors") from causal factors that do not pass that test ("lesser contributory cause[s]"). Following that intention and guideline, Employer argues that we can "avoid reading unnecessary conflict between the two statutes" and apply Section 52-1-12.1 "only when (a) the intoxication does not rise to the level of meeting the 'objectively reasonable' foreseeability test and (b) the intoxication is nevertheless deemed part of the aggregate of contributors to an injury, i.e.[,] a lesser contributory cause." (Emphasis omitted.)

**{23}** Applying its analysis, Employer concludes that the vast spread between no recovery and a 90% recovery "suggests that the [L]egislature envisioned that the causation threshold is inversely proportionate to the outcome"; that is, "[p]roximate causation by intoxication would obliterate Worker's recovery. However, a lesser contributor gets a 90% recovery for Worker." Employer asserts that "[o]nly with this breadth of difference in the degree of causal effect is the legislative intent served."

**{24}** In reply to an argument of Worker, Employer also argues that the Legislature did not intend "occasioned by" to mean "solely by." It points to Section 52-1-12, which deals with drug use and was the subject of *Ortiz*, and which, different than in Section 52-1-11, states the standard of "occasioned solely by." Employer argues that if the Legislature wanted to limit "occasioned by" in the foregoing manner, it could have changed the wording in Section 52-1-11 to "occasioned solely by" when it enacted Section 52-1-12.1. Further, Employer sees the Legislature as purposefully expressing a "most significant cause of the accident in Section 52-1-11" as distinguished from a "less significant cause of the accident in Section 52-1-12.1," thereby becoming "a determination of the relative impact of the causal factors in the outcome. . . . Section 52-1-11 points to the cause of the injury. Section 52-1-12.1 points to that which had an impact on the injury."

**{25}** We reject Employer's arguments. We see no indication from the Act or two statutes in question, including Section 52-1-12, that the Legislature intended "occasioned by" in Section 52-1-11 when set against "a contributing cause" in Section 52-1-12.1 to require a weighing of the significance or strength of any causative factor, or to analyze causative factors by whether the risk of injury was objectively foreseeable. As we discuss later in this opinion, to adopt Employer's analytic approach would, we believe, go beyond our interpretive authority. Under the circumstances in this case, we prefer the least judicially invasive route into ambiguous legislation in order to arrive at a decision whether Worker is totally barred or entitled to 90% of his benefit.

**{26}** Choosing an analytic approach in this case is no easy task given the ambiguities created by the combination of our case law, the use of different causation language in

Sections 52-1-11, 52-1-12, and 52-1-12.1, and the Legislature having left Section 52-1-11 unchanged when it enacted Sections 52-1-12 and 52-1-12.1. *See Smith*, 2004-NMSC-032, ¶ 10 ("[W]hen a statute is ambiguous, we may consider the clear policy implications of its various constructions.").

**{27}** It strikes us that a determination of causation, as that concept is mired in ambiguity under the statutes, more soundly defaults to the approach followed by the WCJ than to the approach Employer advances. As we understand the WCJ's approach, it was that, while Worker's intoxication was a contributing cause of his injury, the injury could also be explained in part by another contributing cause shown by the evidence, moving the WCJ to apply Section 52-1-12.1. The WCJ made findings of fact in regard to each causative factor. We cannot say, looking at the whole record, that either of the WCJ's findings dealing with causation was not supported by substantial evidence.

**{28}** Of course, one will still ask, what then does "occasioned by" in Section 52-1-11 mean? While a plain reading of "a contributing cause" in Section 52-1-12.1 may be one contributing or proximate cause among one or more other contributing or proximate causes, how does that meaning square with Section 52-1-11?

**{29}** The WCJ could rationally infer from the evidence that there were reasons why Worker slipped and fell that were attributable as much, if not more, to Worker's precarious position and activities while standing on the narrow ledge of the truck, as to his intoxication. We give deference to a WCJ's findings in regard to conflicting evidence of causation. *See Herman v. Miners' Hosp.*, 111 N.M. 550, 552-53, n.2, 807 P.2d 734, 736-37, n.2 (1991) (stating that the case presented "conflicting evidence that required the finder of fact to determine [the] facts based on its evaluation of credibility, demeanor, and other relevant factors, not evidence that required the fact finder to speculate as to causation," and indicating that the fact finder is given deference when faced with conflicting evidence).

**{30}** We conclude that the WCJ's decision was not erroneous. It is supported by our reading of various statutes and also by our Supreme Court's recent decision in *Ortiz*, which reversed this Court's *Ortiz* decision. First, the enactment dates and language used in the three pertinent statutes are significant. Section 52-1-11, relating to intoxication and using "occasioned by," was enacted in 1929. 1929 N.M. Laws, ch. 113, § 8. Section 52-1-12, relating to drugs and using "occasioned solely by," was enacted in 1971. 1971 N.M. Laws, ch. 55, § 1. Section 52-1-12.1, relating to both intoxication and drugs and using "a contributing cause," was enacted in 2001. 2001 N.M. Laws, ch. 87, § 1. We note that Section 52-1-10.1, relating to allocation of fault and the employer's right to reimbursement from proceeds recovered against the wrongdoer and using the terms "fault" and "proximately caused," was enacted in 1987. 1987 N.M. Laws, ch. 141, § 4.

**{31}** The Legislature did not change "occasioned by" in Section 52-1-11 (intoxication) when it enacted Section 52-1-12 (drugs) years later using "occasioned solely by." The Legislature did not change either of the foregoing sections when it enacted Section 52-1-12.1

9

(intoxication and drugs) years later using "a contributing cause." Nor did the Legislature change any of the language in Sections 52-1-11 or 52-1-12 when it enacted Section 52-1-10.1 using "fault" and "proximately caused," terms that, in the context of that section's allocation of fault based on percentage of fault, appear to lend themselves more to a comparative or weighted-fault concept than to the dichotomies created in the other sections that appear to create two dispositions only, one a bar to recovery and the other a ten-percent reduction in benefits.

**{32}**　　As these statutes stand, two conclusions appear inescapable. First, were Section 52-1-11 to be read as calling for an evaluative-causation standard such as primary or principal cause, and were Section 52-1-12.1 to be read as calling for a causation standard of a secondary or lesser cause, two different tests would exist under Sections 52-1-11 for intoxication and 52-1-12 for drugs; that is, Section 52-1-11 would call for a primary-cause standard with respect to intoxication, while 52-1-12 would call for a sole-cause standard with respect to drugs. We do not believe that the Legislature would intend this result. Furthermore, this difference would throw Section 52-1-12.1 completely off balance were it to be interpreted to call for a lesser-cause standard, since, while such a standard would be compatible with a Section 52-1-11 primary-cause standard, it would not be compatible with a Section 52-1-12 sole-cause standard. It is also significant, in our view, that the Legislature did not change the language in Sections 52-1-11 and 52-1-12 when initiating what appears to be a comparative or evaluative standard in Section 52-1-10.1. That a primary, lesser-evaluative-causation standard is not called for in the statutes is also borne out by the absence of any indication that the Legislature has adopted such a standard in any current statutory scheme outside of comparative-negligence or comparative-fault theory.

**{33}**　　Further complicating matters is that *Ortiz* appears to implicitly confirm that a primary, lesser-cause standard is not called for in Section 52-1-12, even though the primary, lesser-evaluative-causation idea was not at issue in the case. In *Ortiz*, the Supreme Court discussed whether the worker's estate's recovery should be barred under Section 52-1-12 under a sole-cause test or whether it should be reduced by ten percent under Section 52-1-12.1. *Ortiz*, 2010-NMSC-021, ¶ 22. The Court set out the WCJ's findings on the issue of causation, which were that the worker's accident was "occasioned solely by" his use of drugs and that the use of the drugs was "the exclusive proximate cause" of the accident. *Id.* ¶ 23 (emphasis omitted). The Court concluded that the evidence supporting the decision was not sufficient to establish that the worker's drug use was the sole cause of the accident, and the Court held that his benefits should be reduced ten percent. *Id.* ¶¶ 24, 31.

**{34}**　　We must assume that the Legislature knows how to use causation language. Section 52-1-10.1 of the Act states, "if the fault of the worker's employer . . . is found to have proximately caused the worker's injury." The same words are found in NMSA 1978, Section 22-17-2(C)(3) (2001), and in NMSA 1978, Section 30-35-2(A) (1963), and in several other statutes. The Legislature has in at least one statute, NMSA 1978, Section 56-7-1(A) and (B)(1) (2005), used "caused by or resulting from" and also "cause[] by[] or arise out of." Note that in the historical and statutory notes of that statute the former law is set out

10

and that former law used the words "primary cause." The Legislature used "injury resulting from[] *or occasioned by*" in our death-caused-by-railroad statute, NMSA 1978, § 41-2-4 (1973) (emphasis added). We have found nothing thus far showing a current statute using "primary cause" or "principal cause" or even "significant cause," "greater cause," or "lesser cause," etc. We suspect that, in dealing with intoxication in the workers' compensation statutes, the Legislature intentionally omitted the word "proximate" because it saw no issue of foreseeability or sequence and perhaps no issue of direct, efficient cause.

**{35}** The statutes leave what appears to be an unintended state of causation, created over time, under circumstances in which the Legislature may not have wanted to tinker with prior wording but nevertheless wanted to redevelop the law in a manner that refined a worker's right to benefits when alcohol or drug use might have in some manner caused or contributed to the worker's accident. We question whether the Legislature intended a worker to be barred from any recovery where alcohol or drug use was the sole cause of the accident, yet intended a reduction in recovery by only ten percent where alcohol or drug use was, for example, a 99% or 50% cause of an accident. Yet Section 52-1-12 and Section 52-1-12.1 addressed in *Ortiz* cause precisely that result, and the manner in which those two statutes and Section 52-1-11 are written, the inescapable conclusion is that Section 52-1-11 and Section 52-1-12.1 also cause precisely that result.

**{36}** We have extended our interpretative authority as far as we care to extend it. While we are not particularly comforted by the approach we take, we are offered and we see no other approach that we can take without stepping on the policy prerogatives of the Legislature. We choose not to engage in an analysis that attempts to weigh or grade the nature of the various causes the evidence has produced. We think it unfortunate that the Legislature created a span of a complete bar on the one hand and a 90% recovery on the other hand, while leaving the language in the two statutes ambiguous.

## 2. Willfulness

**{37}** Section 52-1-11 provides that benefits will be denied if the injury was "willfully suffered by him or intentionally inflicted by himself." Citing a statement in *Ortiz*, Worker's view is that once it is determined that intoxication was but a contributing cause to the injury under Section 52-1-12.1, to determine that he willfully suffered the injury under Section 52-1-11 would nullify Section 52-1-12.1. *See Ortiz*, 2009-NMCA-041, ¶ 24 (stating that "[i]t is contrary to logic to presume that the Legislature intended to allow employers to avoid the obligation under Section 52-1-12.1 to pay ninety percent of a compensation award when drug use is a contributing cause of injury by allowing them to argue that a worker's drug use resulted in a willfully suffered injury"). We need not engage Worker's argument, nor do we care to comment on the statement in *Ortiz*. It appears to us that the WCJ determined from the evidence that Worker's behavior and conduct did not rise to the level of willfulness despite the indication of intoxication, and we will not hold as a matter of law that, under the Act, any degree of voluntary intoxication constitutes the willfulness element in Section 52-1-11.

11

**{38}** Employer nevertheless points out that willfulness for purposes of Section 52-1-11 "requires that the worker have knowledge of the peril and the ability to foresee the injury for which willful misconduct is to blame." *Delgado*, 2001-NMSC-034, ¶ 25 (internal quotation marks and citation omitted). Combining the foregoing and another test, *Delgado* held that "willfulness renders a worker's injury non-accidental, and therefore outside the scope of the Act, when: (1) the worker . . . engages in an intentional act or omission, without just cause or excuse, that is reasonably expected to result in the injury suffered by the worker; (2) the worker . . . expects the intentional act or omission to result in the injury, or has utterly disregarded the consequences; and (3) the intentional act or omission proximately causes the injury." *Id.* ¶ 26. We will assume that our Supreme Court meant this test to apply when addressing willfulness under Section 52-1-11, although the Court's use of the term "proximate cause" with a citation to *Estate of Mitchum* causes some concerns about the validity of the test as it may be applied to Section 52-1-11. *See Delgado*, 2001-NMSC-034, ¶ 29.

**{39}** Employer thus wants this Court to hold that, as a matter of law, under *Delgado*'s test and as a per se willfulness, Worker's intoxicated condition bars his recovery. *Delgado* seems to indicate that one or more parts of the test require the fact finder to evaluate credibility and factually disputed circumstances. *See id.* ¶¶ 27-29. We will not delve more deeply into those indications. We determine that, in the present case, there was substantial evidence to support the WCJ's factual determinations relating to willfulness and that she correctly applied the law to the facts.

## C. CONCLUSION

**{40}** We affirm the WCJ's compensation order in favor of Worker.

**{41}** **IT IS SO ORDERED.**

_____
**JONATHAN B. SUTIN, Judge**

**I CONCUR:**

_____
**JAMES J. WECHSLER, Judge**

**TIMOTHY L. GARCIA, Judge (specially concurring).**

**GARCIA, Judge (concurring).**

**{42}** I write to concur in the majority decision because the statutory conflict in this case is not reconcilable by any established basis of statutory construction. The means chosen by the majority to resolve the dilemma are in direct contradiction to one of the basic rules of

statutory construction, that we will not read into a statute language that is not there. *Reule Sun Corp. v. Valles*, 2010-NMSC-004, ¶ 15, 147 N.M. 512, 226 P.3d 611 (filed 2009). Under this decision, we are forced to add the word "solely" to the term "occasioned by" in Section 52-1-11 in order to avoid having two separate definitions and interpretations of the phrase "contributing cause" in Section 52-1-12.1. Our ultimate interpretation also contradicts the Legislature's express use of the words "occasioned by . . . as stated in Section 52-1-11" that were included in Section 52-1-12.1. This Court is only to resort to adding words into a statute when it cannot otherwise make sense of the language used. *See State ex rel. Pub. Employees Ret. Ass'n v. Longacre*, 2001-NMCA-076, ¶ 9, 131 N.M. 156, 33 P.3d 906, *rev'd on other grounds*, 2002-NMSC-033, 133 N.M. 20, 59 P.3d 500. In order to resolve this case, it is unfortunate and a measure of last resort that this Court must now utilize such a rare exception to statutory construction that adds significant and material language into Section 52-1-11.

**{43}** Employer presented an even more unappealing construction of the applicable statutes. Employer's solution would be to give "contributing cause" two separate definitions and interpretations under Section 52-1-12.1. Employer's interpretation also contradicts our basic rules of statutory construction.

**{44}** A statutory construction analysis begins by examining the words chosen by the Legislature and the plain meaning of those words. *State v. Hubble*, 2009-NMSC-014, ¶ 10, 146 N.M. 70, 206 P.3d 579. "Under the plain meaning rule, when a statute's language is clear and unambiguous, we will give effect to the language and refrain from further statutory interpretation." *Id.* (internal quotation marks and citation omitted). We must give words their usual and ordinary meaning unless a contrary intent is clearly indicated. *State ex rel. Duran v. Anaya*, 102 N.M. 609, 611, 698 P.2d 882, 884 (1985). The statutory language "contributing cause" is a common phrase and should generally be given its ordinary meaning. *See* Black's Law Dictionary 250 (9th ed. 2009) (defining contributing cause as "[a] factor that—though not the primary cause—plays a part in producing a result"). *Ortiz* has effectively addressed the definition of contributing cause for the purposes of Section 52-1-12.1. *Ortiz*, 2010-NMSC-021, ¶¶ 22-30. Employer does not cite to, and we have not found, any precedent that allows the same phrase in a statute to have two different definitions or meanings when it is applied within the same statutory scheme and subject matter. *See ITT Educ. Servs., Inc. v. Taxation & Revenue Dep't*, 1998-NMCA-078, ¶ 10, 125 N.M. 244, 959 P.2d 969 (stating that this Court will not consider propositions that are not supported by cited authority). In addition, Employer's statutory construction would create a new conceptual application of causation. Employer would replace the proximate cause analysis of "occasioned by" that was established in *Estate of Mitchum* with one that utilizes "occasioned primarily by" or "occasioned principally by" under Section 52-1-11. *See Estate of Mitchum*, 113 N.M. at 89-90, 823 P.2d at 331-32. Again this novel concept of primary causation cannot be found in any similar statutory analysis of causation in New Mexico, and no authority has been cited by Employer to support such a concept. *See ITT Educ. Servs.*, 1998-NMCA-078, ¶ 10.

**{45}** It is the longstanding duty of our courts to reconcile different statutory provisions so as to make them consistent, harmonious, and sensible. *See El Paso Elec. Co. v. Milkman*, 66 N.M. 335, 338, 347 P.2d 1002, 1004 (1959). We have also stated that where there is ambiguity created by statutes, the court will consider all existing statutes relating to the same subject so that, if possible, all of the acts will be made operative. *Runyan v. Jaramillo*, 90 N.M. 629, 630, 567 P.2d 478, 479 (1977). We must consider the language of an act as a whole and construe each part in connection with every other part so as to produce a harmonious whole. *Westgate Families v. County Clerk*, 100 N.M. 146, 148, 667 P.2d 453, 455 (1983). I am only concurring with the interpretation of Sections 52-1-11 and 52-1-12.1 because the Employer's interpretation of these statutes is equally weak, and I cannot find any support for Employer's position in our precedent or the principles of statutory construction. Even if Employer's interpretation of "occasioned primarily by" were to be adopted by this Court, the district court did not err in concluding that Worker's injuries were not occasioned primarily by intoxication. The conclusion of equal causation between the two different causes present at the time of the accident was also supported by the evidence. The outcome of the case would not have changed.

**{46}** We have now done our part to interpret the irreconcilable language that was utilized into Section 52-1-12.1. I would hope that the Legislature will now utilize its authority and policy-making prerogative to clarify its intent and revisit the wording in Sections 52-1-11 and 52-1-12.1.

_____
**TIMOTHY L. GARCIA, Judge**

**Topic Index for *Villa v. City of Las Cruces*, Docket No. 29,456**

| | |
|---|---|
| **AL** | **ADMINISTRATIVE LAW AND PROCEDURE** |
| AL-EV | Evidence |
| AL-LI | Legislative Intent |
| AL-SR | Standard of Review |
| AL-SE | Sufficiency of Evidence |
| | |
| **AE** | **APPEAL AND ERROR** |
| AE-SR | Standard of Review |
| | |
| **ST** | **STATUTES** |
| ST-CS | Conflicting Statutes |
| ST-CN | Constitutionality |
| ST-IP | Interpretation |
| ST-LI | Legislative Intent |
| ST-RC | Rules of Construction |

**TR**            **TORTS**
TR-PC        Proximate Cause

**WC**            **WORKERS COMPENSATION**
WC-CC       Causal Connection
WC-II        Intentional Injury
WC-IN       Intoxication
WC-WG      Workers' Compensation, General