This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

### IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-37869**

**JENNIFER A. STOCKER,**

Worker-Appellant,

v.

**LOVELACE REHAB HOSPITAL
and HARTFORD INSURANCE
GROUP,**

Employer/Insurer-Appellees.

**APPEAL FROM THE WORKERS' COMPENSATION ADMINISTRATION
Rachel A. Bayless, Workers' Compensation Judge**

Gerald A. Hanrahan
Albuquerque, NM

for Appellant

Camp Law, LLC
Minerva Camp
Albuquerque, NM

for Appellees

### MEMORANDUM OPINION

**MEDINA, Judge.**

**{1}**    Jennifer Stocker (Worker) appeals the Workers' Compensation Judge's (WCJ) order denying coverage for a hip surgery she claims was reasonably necessary to address a compensable injury. On appeal Worker raises numerous claims, including (1) the WCJ erred in resetting her February 2016 trial and granting Lovelace Rehab Hospital/Hartford Insurance Group's (collectively, Employer) delayed request for an independent medical evaluation (IME); (2) the WCJ erred as a matter of law by denying

coverage for Worker's hip surgery; and (3) whole record review does not support the WCJ's decision to deny coverage for the hip surgery. We affirm.

## BACKGROUND

**{2}**      In March 2011, Worker, a physical therapist assistant, was injured as a result of a patient falling on her. Worker's injuries were diagnosed as a fracture of her left superior pubic root, extending to the anterior wall of the acetabulum, for which she received care from Dr. John Sloan and then Dr. Paul Legant. After the accident, Employer provided Worker with temporary total disability (TTD) benefits until August 29, 2011. Worker reached maximum medical improvement (MMI) on October 13, 2011, and returned to work with a 3 percent whole person impairment rating. Employer commenced payment of permanent partial disability (PPD) payments to Worker on October 13, 2011. However, Worker continued to have pain in her left hip and groin. On April 17, 2012, WCJ Terry Kramer, approved a lump sum settlement agreement that covered 459 weeks of PPD benefit payments at 3 percent impairment. During the settlement hearing, the WCJ advised Worker that she maintained the right to seek modification should her condition change in the future.

**{3}**      In June 2012, Worker resigned her position with Employer for reasons unrelated to her work injury and moved to Michigan. In March 2015, Worker met with Dr. Kevin Snyder, in Michigan who diagnosed Worker with chronic active sacroiliitis[1] and referred her to Dr. Bruce Lawrence.

**{4}**      In July 2015, Worker filed a complaint with the Workers' Compensation Administration (WCA), alleging injuries to her left hip, groin, buttock, leg, and pelvis, which she attributed to the 2011 work accident. Worker complained in part that she suffered three pelvic fractures as well as a labrum tear and cyst in her left hip. Worker sought benefits for unpaid medical bills incurred, including treatment by Dr. Snyder.

**{5}**      In December 2015, Employer objected to Worker receiving treatment from Dr. Snyder because he was not licensed to practice medicine in New Mexico, and because Worker had not filed a motion with the director seeking approval of an out-of-state health care provider (HCP). In January 2016, Worker sought approval of Dr. Snyder's services, which the WCJ approved in February 2016.

**{6}**      Trial on Worker's complaint was scheduled for February 11, 2016. However in, July 2016 the WCJ granted Employer's motion for an IME and reset trial for November 9, 2016. The IME occurred in July 2016, and the examination report was submitted to the WCJ in August 2016.

---

[1]Sacroiliitis is "an inflammation of one or both of [the] sacroiliac joints—situated where [the] lower spine and pelvis connect." Mayo Clinic Staff, Sacroiliitis, Mayo Clinic: Patient Care & Health Information, https://www.mayoclinic.org/diseases-conditions/sacroiliitis/symptoms-causes/syc-20350747 (last visited Apr. 27, 2021).

**First Trial**

**{7}** The contested issues during Worker's November 2016 trial included the extent of injuries causally related to the May 2011 work accident; whether Worker's condition deteriorated in March or April 2015 such that she was no longer at MMI; identification of authorized HCPs under NMSA 1978, Section 52-1-49 (1990); and whether Worker is entitled to attorney fees. During trial the WCJ considered Worker's medical records, a form letter from Dr. Snyder, and deposition testimony from Dr. Legant. The WCJ also considered the IME panel report as well as deposition testimony from Dr. Brian Shelley and Dr. Daniel Duhigg of the IME panel. Upon consideration of the evidence, the WCJ issued a compensation order on November 23, 2016. In the order the WCJ found that Worker's injuries did not include a labrum tear and cyst. The WCJ also found in relevant part that Worker was not at MMI for injuries caused by the work accident and was therefore entitled to ongoing medical care; Dr. Snyder was an authorized HCP and Dr. Lawrence was in the chain of authorized referrals; and Worker was entitled to reasonable attorney fees. Neither Employer nor Worker appealed the compensation order.

**{8}** After entry of the 2016 compensation order Worker continued treatment with Dr. Snyder for the injuries identified by the IME panel. Dr. Snyder referred Worker to Dr. Robert Dowling for physical therapy as recommended by the IME panel and ordered in the 2016 compensation order. On March 28, 2017, Dr. Dowling noted limitations in Worker's hip that he believed were related to a labral tear and referred Worker back to Dr. Snyder for evaluation of the suspected tear. Dr. Snyder diagnosed Worker with a labral tear and referred her to Dr. Philip Schmitt for surgery. Employer denied coverage for Dr. Snyder's surgical referral as unrelated to Worker's injuries identified in the 2016 compensation order.

**{9}** Nevertheless, Worker consulted with Dr. Schmitt in April 2017 who agreed with the labral tear diagnosis and referred Worker to his partner Dr. Diana Silas for surgery. In May 2017, Employer applied for another IME to address whether Worker was at MMI and because Worker requested approval for surgical consultation and physical therapy. Dr. Silas performed surgery to repair Worker's labral tear in June 2017. Dr. Silas assumed Worker's care after the surgery. WCJ Rachel Bayless granted Employer's application for a second IME in June 2017. The second IME occurred in September 2017. In November 2017, Employer filed a complaint seeking reimbursement from Worker for alleged overpayment of benefits. Worker did not respond to Employer's complaint.

**Second Trial**

**{10}** Trial on Employer's complaint occurred in August 2018 during which the WCJ considered:

> a. Whether Worker [has] reached [MMI] , and if so, the date of MMI[;]

b. [i]f MMI has been reached, whether Employer. . . is entitled to a credit for overpayment of [TTD] benefits[;]

c. [i]f MMI has been reached, whether [W]orker is entitled to [PPD] benefits, and if so, to what extent and duration[;]

d. [t]he nature and extent of Worker's entitlement to past and future medical care pursuant to [Section] 52-1-49 . . . and the prior [c]ompensation [o]rders[;]

e. [w]hether Employee . . . is entitled to a credit for overpayment of indemnity benefits[;]

f. [w]ho are authorized [HCP]s as defined by [Section] 52-1-49.

In consideration of these issues the WCJ reviewed the 2016 compensation order, Worker's medical records since the 2016 compensation order, filings by both parties throughout the case, and the second IME panel report.

{11} After reviewing the evidence, the WCJ issued a compensation order in which she concluded that

7. Dr. Schmi[tt], Dr. Silas, and Dr. Silas' referrals after the June 5, 2017 surgery, who were out of state [HCP]s not approved by the [WCA] director and for whose services Employer. . . denied payment, are not authorized to treat Worker[;]

8. [m]edical records and form letters of providers who are not authorized [HCP]s are not admissible as substantive, direct evidence on the work accident and resulting injury[;]

9. [t]he issue of what injuries Worker suffered as the natural and direct result of the work accident were previously tried and adjudged in the 2016 [c]ompensation [o]rder[;]

10. [t]he 2016 [c]ompensation [o]rder resolved the issues presented for trial and was [a] final order for purposes of appeal[;]

. . . .

12. [a]s determined in the 2016 [c]ompensation [o]rder, the nature and extent of Worker's injuries causally related to the March 22, 2011[,] work accident did not include the alleged injury of a "Left hip: Labrum tear and cyst"[;]

13.     Worker having failed to appeal the 2016 [c]ompensation [o]rder or otherwise apply for modification of that compensation order, Worker is bound by [the WCJ]'s determination that her causally related injuries do not include a labral tear of the left hip.

The WCJ also concluded that Employer was entitled to credit for overpayment of benefits paid after Worker reached MMI on October 13, 2017. This appeal followed.

**DISCUSSION**

**{12}**   Worker raises several legal arguments in response to the WCJ's 2018 and 2016 compensation orders. With regard to the 2018 compensation order, Worker argues that the WCJ erred as a matter of law in denying coverage for her hip surgery. Within this argument Worker raises five sub arguments including (1) the WCJ improperly weighed Worker's treating physicians testimony; (2) the WCJ erred in finding that Dr. Silas was not an HCP; (3) the WCJ erred in finding that the 2016 compensation order was binding; (4) the WCJ erred in applying a causation analysis when determining whether surgery was reasonable and necessary; and (5) the WCJ erred in denying coverage for Worker's surgery where Employer was in breach of the 2016 compensation order. Worker also argues that whole record review does not support the WCJ's denial of coverage for Worker's hip surgery in the 2018 compensation order. Finally, Worker argues that the WCJ erred prior to the 2016 compensation order in granting Employer's request for an IME and resetting trial. We address each of Worker's arguments in the order presented here.[2]

**{13}**   Before we address the merits of Worker's arguments, we pause to express our concern with Worker's briefing. Worker's brief in chief raises numerous issues but provides little to no substantive analysis of the issues and often fails to cite the record and supporting legal authority. *See* Rule 12-318(A)(4) NMRA (requiring that the brief in chief include "an argument which, with respect to each issue presented, . . . contain[s] a statement of the applicable standard of review, the contentions of the appellant, and a statement explaining how the issue was preserved in the court below, with citations to authorities, record proper, transcript of proceedings, or exhibits relied on"); *Guest v. Berardinelli*, 2008-NMCA-144, ¶ 38, 145 N.M. 186, 195 P.3d 353 ("To present an issue on appeal for review, appellants must submit argument and authority."); *Elane Photography, LLC v. Willock*, 2013-NMSC-040, ¶ 70, 309 P.3d 53 (stating that "[t]o rule on an inadequately briefed issue, [appellate courts] would have to develop the arguments [themselves], effectively performing the parties' work for them" and explaining that doing so "creates a strain on judicial resources and a substantial risk of

---

2Employer's answer brief includes three separate motions to strike in whole or in part Worker's brief in chief. Rule 12-309 NMRA of our Rules of Appellate Procedure sets out the procedure for filing motions in this Court. Because Employer's motions fail to comply with our rules, we decline to consider them here. *See* Rule 12-312(D) NMRA.

error" (citations omitted)). We do not develop arguments for parties, and in this opinion we have declined to review multiple arguments for lack of development.[3]

## The WCJ's Denial of Coverage for Worker's Hip Surgery and Related Treatment Was Not Error

**{14}** "We review the WCJ's application of the law to the facts de novo." *Ruiz v. Los Lunas Pub. Schs.*, 2013-NMCA-085, ¶ 5, 308 P.3d 983. "With respect to the admission or exclusion of evidence, we generally apply an abuse of discretion standard where the application of an evidentiary rule involves an exercise of discretion or judgment, but we apply a de novo standard to review any interpretations of law underlying the evidentiary ruling." *Dewitt v. Rent-A-Ctr., Inc.*, 2009-NMSC-032, ¶ 13, 146 N.M. 453, 212 P.3d 341.

## The WCJ Appropriately Weighed the Available Opinions of Worker's Treating Physicians and Whole Record Review Supports the WCJ's Denial of Coverage for Worker's Hip Surgery

**{15}** Worker argues that the WCJ erred as a matter of law in improperly giving greater weight to the opinions of the IME panel than the opinions of Worker's treating physicians. In support of her arguments Worker cites *Banks v. IMC Kalium Carlsbad Potash Co.*, 2003-NMSC-026, ¶ 25, 134 N.M. 421, 77 P.3d 1014, and *Grine v. Peabody Natural Resources*, 2006-NMSC-031, ¶ 25, 140 N.M. 30, 139 P.3d 190, which both recognize that treating physicians are in a better position to evaluate the patient because they have a greater opportunity to know and observe the patient. Worker also generally discusses the policy underpinnings supporting greater deference to treating physician testimony and identifies doctors Sloan, Legant, Snyder, Dowling, and Silas as her treating physicians. While Worker accurately cites *Banks* and *Grine*, the WCJ, as trier of fact, ultimately can accept or reject the evidence once admitted, including testimony in whole or part, from treating physicians. *Banks*, 2003-NMSC-026, ¶ 34. For the reasons we explain below, we conclude the WCJ did not err in weighing the medical opinions offered in this case.

**{16}** Worker first directs our attention to Dr. Sloan, who suspected Worker might have a labral tear. Dr. Sloan referred Worker to Dr. Legant for further evaluation, who, after first reviewing Worker's pelvic x-ray, and later an MRI and bone scan, concluded that the MRI was not consistent with a left labral hip tear. Although Worker disagrees with Dr. Legant's opinion and suggests that his opinion is unreliable, we do not reweigh evidence on appeal. *See Dewitt*, 2009-NMSC-032, ¶ 12.

---

3We remind Worker that it is in a litigant's interest to limit the number of issues they choose to raise on appeal in order to ensure that the issues presented are ones that can be adequately supported by argument, authority, and factual support in the record, as required by Rule 12-318(A)(4). *See Rio Grande Kennel Club v. City of Albuquerque*, 2008-NMCA-093, ¶¶ 54-55, 144 N.M. 636, 190 P.3d 1131 ("[W]e encourage litigants to consider carefully whether the number of issues they intend to appeal will negatively impact the efficacy with which each of those issues can be presented.").

**{17}**   To the extent Worker contends the 2018 WCJ should have given more weight to the opinions of Dr. Snyder, Dr. Dowling, and Dr. Silas, we observe that Dr. Snyder was never deposed in this case and the 2018 WCJ was only provided with Dr. Snyder's HCP form letter diagnosing a labral tear and his medical records. Notably Worker does not dispute the 2018 WCJ's finding that the medical records from Worker's out-of-state doctors, including Dr. Snyder, revealed that they had not "reviewed [Worker's] treatment records or imaging studies conducted in New Mexico" and "based their opinions on prior history as given by Worker." The WCJ found that the IME panel had a more complete picture of Worker's treatment and complaints and was therefore "in the best position to form reasonable, educated opinions regarding the nature and extent of injuries causally related as a natural and direct result of the work accident."

**{18}**   With regard to Dr. Silas, the WCJ determined that Dr. Silas was not an authorized HCP and, therefore, not authorized to testify regarding causation of Worker's injuries.[4] Worker separately challenges this finding, however, as explained below, we conclude that the WCJ properly excluded testimony from Dr. Silas.

**{19}**   As for Dr. Dowling, the WCJ acknowledged that he provided physical therapy to Worker, including acupuncture, dry needling, and cupping treatments, beginning in 2017 and referred Worker to Dr. Snyder for a suspected labral tear in 2018. Dr. Dowling's services, however, were limited to providing physical therapy, and Dr. Dowling's referral to Dr. Snyder reveals that Dr. Dowling could not confirm his suspicion of a labral tear, let alone provide an opinion as to how the labral tear occurred.

**{20}**   Given the opinions of Worker's treating physicians in New Mexico, the lack of testimony from Dr. Snyder, the exclusion of testimony from Dr. Silas, the speculative opinion of Dr. Dowling, and the insufficient treatment history reviewed by Worker's out-of-state providers, the WCJ was left with little evidence from Worker's treating physicians. To that end, the 2018 compensation order does show that the WCJ took into account the available evidence from Worker's treating physicians. Our review shows that the WCJ carefully weighed the available evidence and, thus, we conclude that no error occurred.

**{21}**   As related to her arguments above, Worker also summarily argues in one paragraph that under a whole record review, the WCJ erred in finding that Worker is not entitled to surgery as a benefit. In support of this argument, Worker asserts that each of her treating physicians agreed that surgery was necessary. Worker's fleeting assertion scarcely addresses which evidence she contends supports reversal under whole record review and does not address the contrary evidence relied upon by the WCJ. Given Worker's sole reliance on the opinions of her treating physicians and our conclusion that the WCJ properly weighed those opinions as well as the IME recommendations, we

---

[4]NMSA 1978, Section 52-1-51(C) (2005, amended 2013) of the Workers' Compensation Act (the Act) provides "[o]nly a [HCP] who has treated the worker pursuant to Section 52-1-49 . . . or the [HCP] providing the [IME] pursuant to this section may offer testimony at any workers' compensation hearing concerning the particular injury in question."

conclude that the evidence in the record supports the WCJ's denial of coverage for the hip surgery.

**Dr. Silas Was Not an Authorized HCP**

**{22}**     Worker argues that the district court erred as a matter of law by not finding Dr. Silas to be an authorized HCP, pursuant to Section 52-1-49. In the 2018 compensation order, the WCJ determined that (1) Dr. Silas was an out-of-state provider who was not approved and, therefore, not authorized to treat Worker; (2) Worker was aware of the approval requirements for out-of-state HCPs but chose not to seek approval; and (3) nothing prevented Worker from seeking appropriate approvals for Dr. Silas. Worker does not dispute these findings. Instead, Worker argues that because an employer has a duty to provide medical treatment pursuant to Section 52-1-49, it should be the employer's duty to obtain approval of out-of-state HCPs as necessary to provide treatment and that the insurer should also be responsible for obtaining authorization because the purpose of the authorization requirement is to control medical costs and insure benefits from this policy.

**{23}**     Worker's arguments implicate the WCJ's interpretation of the Act's provisions for authorization of HCPs and the corresponding regulations. The interpretation of the Act and associated regulations is a question of law that we review de novo. *Banks*, 2003-NMSC-026, ¶ 11. "Although a court will generally defer to an agency's interpretation of . . . [a] regulation that it is charged with administering, it is the function of courts to interpret the law in a manner consistent with the legislative intent." *Howell v. Marto Elec.*, 2006-NMCA-154, ¶ 16, 140 N.M. 737, 148 P.3d 823. To discern the Legislature's intent, we "look first to the plain language of the statute, giving the words their ordinary meaning, unless the Legislature indicates a different one was intended." *Fowler v. Vista Care*, 2014-NMSC-019, ¶ 7, 329 P.3d 630 (internal quotation marks and citation omitted).

**{24}**     Section 52-1-49 sets out procedures for HCP selection and authorization, including selection of the initial provider, opportunity to change providers, and means of objecting to selections. Section 52-1-49(B) provides that an employer shall make the initial selection of an HCP or allow the worker to make the selection. Section 52-1-49(C) provides that after an initial sixty-day period "the party who did not make the initial selection may select a [HCP] of his[/her] choice." Section 52-1-49(C) goes on to require that "the party seeking such a change shall file a notice of the name and address of his[/her] choice of [HCP] with the other party at least ten days before treatment from that [HCP] begins." The purpose of the notice requirement is to provide the nonselecting party opportunity to object to the proposed HCP as set out in Section 52-1-49(D).

**{25}**     With regard to selection of HCPs pursuant to Section 52-1-49, the phrase "health care provider" includes various providers in different fields of health care and generally requires licensure under New Mexico law. *See generally* NMSA 1978, § 52-4-1 (2007). However, Section 52-4-1(Q) provides that a HCP may also be "any person or facility that provides health-related services in the health care industry, *as approved by the*

*director.*" (Emphasis added.) A corresponding regulation provides that "[a]n HCP that is not licensed in the state of New Mexico must be approved by the [WCA's] director to qualify as an HCP under the [A]ct." 11.4.7.10(A) NMAC. The regulations also provide that "[t]he [WCA] director's approval may be obtained by submitting an application to the [WCA] director and proposed order, supported by an original affidavit of the HCP seeking approval." 11.4.7.10(C) NMAC.

**{26}** A plain reading of Section 52-1-49 demonstrates that the HCP selection process shifts between the parties beginning with the initial selection by the employer or—if agreed to—the worker. After the initial selection, the nonselecting party may then choose a different HCP subject to objection by the party that made the initial selection. No matter the stage of this process, however, the proponent of the change in provider must select an HCP as defined in Section 52-4-1. If the proposed provider is not licensed in New Mexico, the WCA's director must approve the provider. Neither the statute nor regulation assign the responsibility of seeking approval from the WCA director to one party over the other, and it is reasonable to infer that the burden lies with the party seeking to change providers.

**{27}** To accept Worker's contention that Employer bears the duty to obtain approval of out-of-state HCPs we would have to disregard the "long-established rule of construction prohibiting courts from reading language into a statute which is not there." *Taylor v. Waste Mgmt. of N.M., Inc.*, 2021-NMCA-026, ¶ 15, 489 P.3d 994 (internal quotation marks and citation omitted). Worker's contention could also lead to an absurd result wherein an employer is required to seek approval of a HCP to which the employer objects. *See* § 52-1-49(D) (identifying the process for both worker and employer to object to HCP choice); *Villa v. City of Las Cruces,* 2010-NMCA-099, ¶ 13, 148 N.M. 668, 241 P.3d 1108 (stating that "[w]e are to read related statutes in harmony so as to give effect to all provisions" (internal quotation marks and citation omitted)); *see also Fowler*, 2014-NMSC-019, ¶ 7 ("We will not read the plain language of the statute in a way that is absurd, unreasonable, or contrary to the spirit of the statute, and will not read any provision of the statute in a way that would render another provision of the statute null or superfluous[.]" (internal quotation marks and citations omitted)).

**{28}** Aside from conclusory assertions that an employer and insurer should always be responsible for obtaining authorization for out-of-state providers, Worker does not substantively develop her arguments or provide any authority in support thereof. *See In re Adoption of Doe*, 1984-NMSC-024, ¶ 2, 100 N.M. 764, 676 P.2d 1329 ("We assume where arguments in briefs are unsupported by cited authority, counsel after diligent search, was unable to find any supporting authority."). Based on the forgoing we conclude that the WCJ did not err in finding that Dr. Silas was not an authorized HCP.

**{29}** To the extent Worker contends that (1) the law of the case doctrine required the WCJ to find that Dr. Silas was an authorized HCP as part of the "chain of authorized referrals" discussed in the 2016 compensation order; and (2) 11.4.7.10(D) NMAC "denies equal protection under the laws in violation of Article II, Section 18 of the New Mexico Constitution[,]" Worker does not substantively discuss the law of the case

doctrine or applicable standards of review and cites only to *Cordova v. Larsen*, 2004-NMCA-087, ¶ 10, 136 N.M. 87, 94 P.3d 830, without context or explanation. Similarly, Worker makes a halfhearted argument that 11.4.7.10(D) NMAC denies equal protection under the law in violation of Article II, Section 18 of the New Mexico Constitution and cites to *Corn v. New Mexico Educators Federal Credit Union*, 1994-NMCA-161, 119 N.M. 199, *overruled on other grounds by Trujillo v. City of Albuquerque*, 1998-NMSC-031, 125 N.M. 721, 965 P.2d 305, without discussion or analysis of the case. It is not our duty to assume how a particular cited authority applies to the facts at hand without adequate analysis from a party. *See Lukens v. Franco*, 2019-NMSC-002, ¶ 5, 433 P.3d 288 (stating that "counsel should properly present this [C]ourt with the issues, arguments, and proper authority. Mere reference in a conclusory statement will not suffice and is in violation of our rules of appellate procedure" (internal quotation marks and citation omitted)). We will not develop Worker's arguments for her, nor will we guess at what her arguments might be. *See Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076. As such, we consider these arguments to be undeveloped and consider them no further.

**The 2016 Compensation Order Was Binding**

**{30}** Worker broadly argues that the WCJ erred as a matter of law in concluding that the 2016 compensation order could not be modified, and as a result, barred Worker from claiming her hip surgery as a medical benefit. In a single string citation, to NMSA 1978, Section 52-1-56 (1989), NMSA 1978, Section 52-5-9 (1989), *Benny v. Moberg Welding*, 2007-NMCA-124, 142 N.M. 501, 167 P.3d 949, and *Henington v. Technical-Vocational Institute*, 2002-NMCA-025, 131 N.M. 655, 41 P.3d 923, Worker argues that benefits are "always modifiable."

**{31}** We agree that compensation orders may be modified. For example Section 52-1-56 provides in pertinent part:

> The [WCJ] may, upon the application of the employer, worker or other person bound by the compensation order, fix a time and place for hearing upon the issue of claimant's recovery. . . . If it appears upon such hearing that the disability of the worker has become more aggravated or has increased without the fault of the worker, the [WCJ] shall order an increase in the amount of compensation allowable as the facts may warrant.

Likewise Section 52-5-9(A) sets out the grounds upon which a party may seek to modify a compensation order and provides:

> The [WCJ], after a hearing, may issue a compensation order to terminate, continue, reinstate, increase, decrease or otherwise properly affect compensation benefits provided by the [Act] . . . or in any other respect, consistent with those acts, modify any previous decision, award or action.

**{32}** In addition to these statutory provisions, in *Benny* this Court considered whether a stipulated lump sum settlement barred a worker from seeking additional benefits and concluded that under Section 52-5-9, a worker might seek additional benefits where she proves that her disability "has become more aggravated or has increased without the fault of the worker." *Benny*, 2007-NMCA-124, ¶¶ 1-4, 7-8 (internal quotation marks and citation omitted). Relying on *Henington*, which concluded—under Section 52-1-56—that a worker may seek additional benefits where her disability has worsened, this Court held that benefits may be modified where injuries have worsened and only upon application by a worker or employer. *Benny*, 2007-NMCA-124, ¶¶ 9-10.

**{33}** Worker's reliance on Sections 52-1-56 and 52-5-9 as well as *Benny* and *Henington* to show that she was entitled to modification of her benefits is misplaced. Worker does not argue that her labral tear was a result of worsening disability caused by compensable injuries identified in the 2016 compensation order but instead, that the labral tear should have been included as a compensable injury from the beginning. Further, although Worker disputes the WCJ's conclusion that the 2016 compensation order was a final, appealable judgment, Worker does not argue that she attempted to otherwise modify the order.[5] Notably, Worker also failed to file a response or answer to the complaint giving rise to the 2018 compensation order in which Worker could have sought modification. Absent application for modification of benefits due to worsening compensable injuries, or analysis explaining why the authorities on which Worker relies apply, based on the record before us, we find no error in the WCJ's conclusion that Worker is bound by the 2016 compensation order.[6]

## Worker's Surgery Was Not Compensable Under NMSA 1978, Section 52-1-28(A) (1987)

**{34}** Worker briefly argues that the "WCJ erred as a matter of law in accepting Dr. Christopher Hanosh's opinion" that her surgery was not related to Worker's compensable hip injury. Specifically, Worker asserts that Dr. Hanosh's opinion was based on tort law principles and that in relying on his opinion the WCJ injected causation into the analysis.

**{35}** Worker cites to *Molinar v. Larry Reetz Construction, Ltd.*, 2018-NMCA-011, ¶ 26, 409 P.3d 956, for the contention that Employer's liability for Worker's surgery depends on whether the service is "reasonable and necessary" and does not include a causation analysis under Section 52-1-28(A). However, Worker does not attempt to analyze or explain *Molinar*'s holding nor does Worker attempt to apply *Molinar*'s reasoning to this case. Instead, Worker simply asserts that the WCJ injected causation into its determination.

---

5We address Worker's arguments regarding finality of the 2016 compensation order in a separate section of this opinion.

6To the extent Worker argues that the 2016 compensation order did not specifically address a labral tear, we disagree. As the WCJ acknowledges in the 2018 compensation order, the 2016 compensation order accepted the medical opinions of the IME panel, which did not include a labral tear.

**{36}** While *Molinar* does distinguish between the causation requirement of Section 52-1-28(A), and the determination of whether treatment is reasonable and necessary for the purposes of Section 52-1-49, Worker's interpretation is overly broad. *Molinar*, 2018-NMCA-011, ¶ 26. The distinction made in *Molinar* was not that services do not need to be related to the compensable injury, but when the injury has already been determined to be caused by a work accident the question of whether treatment for the injury is reasonably necessary no longer concerns causation. *Id.* Worker ignores the fact that the surgery was to repair a tear that was not determined to be part of her compensable work-related injury.

**{37}** The WCJ's finding that the labral tear was not part of Worker's compensable work-related injury is also dispositive of Worker's claim that the WCJ erred in denying compensation for Worker's surgery to repair that tear. An employer has no obligation to supply medical treatment or to pay for surgery for a condition that was not caused by a work-related injury.

### The WCJ Did Not Err in Denying Compensation for Worker's Surgery

**{38}** Worker argues that the WCJ erred as a matter of law in denying coverage for her hip surgery because Employer was made aware that the surgery was necessary through Worker's demands and because Employer breached their duty to supply prompt medical treatment. In support of her argument Worker cites *Bowles v. Los Lunas Schools*, 1989-NMCA-081, ¶ 26, 109 N.M. 100, 781 P.2d 1178 (citing 2 Arthur Larson, *Workmen's Compensation Law* § 61.12(d) (1989)), for the proposition that an employer's knowledge of an injury imputes a duty to provide medical treatment.

**{39}** As Worker acknowledges, *Bowles* interpreted a prior version of the Act which is not applicable to this case. Indeed, in *Vargas v. City of Albuquerque*, this Court recognized that an amendment to the Act providing for a choice of provider after sixty days supplanted the test announced in *Bowles* and held that a worker must instead "establish that the services were 'reasonable and necessary' in order to hold the employer to be financially responsible for the payment of such services." 1993-NMCA-136, ¶ 6, 116 N.M. 664, 866 P.2d 392. Other than a conclusory assertion that medical treatment was necessary, Worker offers no argument as to whether surgery was reasonable and necessary, pursuant to *Vargas* let alone as explained in *Molinar*. Therefore, we consider this argument to be undeveloped and consider it no further. *See Corona v. Corona*, 2014-NMCA-040, ¶ 28, 329 P.3d 701 ("This Court has no duty to review an argument that is not adequately developed.").

### Worker's Arguments Regarding the Issues Determined in the 2016 Compensation Order Are Untimely

**{40}** Worker argues that during an earlier phase of this case, the WCJ erred as a matter of law in vacating the February 11, 2016, trial setting to allow for an IME asserting that the decision violated the Act's requirement of a quick adjudication process. Worker also asserts that the 2016 compensation order was not a final,

appealable order because the WCJ concluded that Worker had not reached MMI, awarded only TTD benefits and continuing medical treatment. Finally Worker asserts that the 2016 compensation order was not a final, appealable order because attorney fees were never awarded and that the deadline for appeal commences only after the award of attorney fees.

**{41}**     Before evaluating the merits of Worker's arguments regarding error prior to the 2016 hearing, we first determine whether Worker's arguments are timely. *See Singer v. Furr's, Inc.*, 1990-NMCA-120, ¶¶ 1-5, 111 N.M. 220, 804 P.2d 411 (concluding that a worker's failure to comply with filing requirements in appealing the WCJ's dismissal of the worker's claim deprived this Court of jurisdiction). Whether Worker's claims are timely turns on whether the 2016 compensation order was a final and appealable order.

**{42}**     Our Supreme Court has stated, "[A]n order or judgment is not considered final unless all issues of law and fact have been determined and the case disposed of by the trial court to the fullest extent possible." *Kelly Inn No. 102, Inc. v. Kapnison*, 1992-NMSC-005, ¶ 14, 113 N.M. 231, 824 P.2d 1033 (internal quotation marks and citation omitted). This body of law has been applied by this Court to determine the finality for appeal of an order or judgment of a WCJ. *See Gomez v. Nielson's Corp.*, 1995-NMCA-043, ¶ 5, 119 N.M. 670, 894 P.2d 1026; *Kellewood v. BHP Min. Int'l*, 1993-NMCA-148, ¶ 1, 116 N.M. 678, 866 P.2d 406; *see also Massengill v. Fisher Sand & Gravel Co.*, 2013-NMCA-103, ¶ 13, 311 P.3d 1231. In the 2018 compensation order the WCJ determined that "[t]he 2016 [c]ompensation [o]rder resolved the issues presented for trial and was [a] final order for purposes of appeal." As noted Worker disputes that the 2016 compensation order disposed of all issues of law and fact because (1) the order did not award attorney fees, and (2) the order concluded that Worker had not reached MMI and awarded only TTD benefits. We address each of Worker's arguments in turn.

**{43}**     To begin, although Worker contends that no attorney fees have been awarded in this case, the WCJ found in the 2016 compensation order that "Worker's attorney obtained a benefit for Worker and is entitled to a reasonable fee" and ordered that reasonable attorney fees were to be determined under separate order. Nevertheless, because the record does not indicate that the WCJ ever issued a separate order setting the amount of awarded attorney fees, we address Worker's arguments.

**{44}**     In arguing that the 2016 compensation order was not final and appealable because it did not award attorney fees, Worker directs us to *Kelly Inn* without discussion of the case. In *Kelly Inn*, our Supreme Court held that the pendency of a determination on attorney fees does not destroy the finality of a judgment on the merits. 1992-NMSC-005, ¶¶ 14-29. In its discussion of the issue the Court reasoned that, "the question of finality of a judgment adjudicating the rights and liabilities of the parties . . . should not turn on whether attorney[] fees and costs are characterized as an additional element of damages, rather than as supplementary relief awarded to the prevailing party. Likewise, the finality of a judgment should not turn on whether the governing statute or court rule authorizes attorney[] fees as part of the relief to be afforded to a successful plaintiff, rather than, for example, as an amount to be taxed as 'costs' in favor of the prevailing

party." *Id.* ¶ 24. With this in mind the Court seemingly approved a bright-line rule that "an unresolved issue of attorney[] fees for the litigation in question does not prevent judgment on the merits from being final." *Id.* ¶ 24 (quoting *Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 202 (1988).

{45}    However, subsequent to its opinion in *Kelly Inn*, in *Trujillo v. Hilton of Santa Fe*, 1993-NMSC-017, 115 N.M. 397, 851 P.2d 1064, our Supreme Court expressly "retreat[ed] from language in *Kelly Inn* that suggested a bright-line rule for notices of appeal in cases involving attorney[] fees." *Trujillo*, 1993-NMSC-017, ¶ 5. The Court explained that its rational in *Kelly Inn* was that "the term 'finality' is to be given a practical, rather than a technical, construction to satisfy the policies of facilitating meaningful appellate review and of achieving judicial efficiency" *Trujillo*, 1993-NMSC-017, ¶ 3. The Court continued stating, "These policies may be served by appeals from judgments declaring the rights and liabilities of the parties to the underlying controversy when resolution of supplemental questions will not alter the judgment or moot or revise decisions embodied therein." *Id.*

{46}    Applying the principles articulated in *Trujillo*, we are unconvinced that the lack of a determination on the amount of attorney fees renders the 2016 compensation a nonfinal appealable decision. The 2016 compensation order stated that Worker's attorney was entitled to an award to be resolved in a separate order. Although a separate order on attorney fees was never issued, a determination on the amount of attorney fees would not have affected the WCJ's decision as to any of the other issues addressed in the order, including determinations relating to compensable injuries, nor would it impede meaningful appellate review of those issues.

{47}    Next, Worker argues that the fact that she was not at MMI at the time of the 2016 compensation order, as well as the fact that the order only awarded TTD benefits, support a conclusion that the compensation order was not a final, appealable order. In support of her arguments Worker cites *Kellewood* without discussion. In *Kellewood* this Court considered whether an order denying the employer's objection to worker's change of HCP was a final, appealable judgment. 1993-NMCA-148, ¶¶ 5-9. In doing so this Court construed the order in light of *Kelly Inn* and *Trujillo* and determined that because "the 'question remaining' to be decided is a determination of whether [the w]orker's injuries are causally related to his employment, and thus whether [the w]orker is entitled to compensation[.] If [the w]orker is unable to prove a compensable injury, he will not be entitled to an award of medical benefits." 1993-NMCA-148, ¶¶ 8-9. This Court went on to explain, "In such an event, this Court's determination of the issue on appeal regarding the [HCP] order would become irrelevant, unnecessary, and moot." *Id.* ¶ 9. Having concluded that the judgment at issue was "interrelated to a determination on the merits of the underlying compensation claims," this Court held that the order was not final and appealable. *Id.* ¶¶ 8-9, 12.

{48}    Conversely, in *Gomez* this Court addressed whether an ex parte contact order was final and appealable. 1995-NMCA-043, ¶ 1. In that case, the WCJ issued a compensation order awarding TTD until further ordered by the WCA. *Id.* ¶ 2.

Subsequently, the district court granted a motion by the employer to enforce medical management, which included a request for ex parte contact with the worker's HCP. *Id.* ¶¶ 3-4. On appeal, the worker argued that the ex parte contact order was final because it addressed the only issues pending before the WCJ. *Id.* ¶ 5. The employer argued first, that the ex parte contact order was not final because it contemplated further proceedings, and second, pursuant to *Kellewood*, that the order was "interrelated with a determination of the merits of the underlying compensation claim." *Gomez*, 1995-NMCA-043, ¶ 5. This Court held that the order was final for the purpose of appeal because at the time the underlying motion was filed no compensation proceedings were pending, therefore, it was possible that no further formal proceedings would be filed. *Id.* ¶ 8. Additionally, this Court acknowledged that unlike *Kellewood*, "the issues of causation and entitlement to some benefits [had] already been determined." *Gomez*, 1995-NMCA-043, ¶ 8.

{49} More recently, in *Massengill* this Court considered whether an order approving a partial lump sum award of PPD was a final decision. 2013-NMCA-103, ¶ 16. In that case, the worker filed a petition for a partial lump sum payment while his complaint for benefits was pending. *Id.* ¶ 2. At the time of the petition the worker had reached MMI and was already receiving PPD but a final PPD determination had not been made. *Id.* The district court granted the worker's petition, but the employer delayed payment of the lump sum award for approximately one month. *Id.* ¶ 3. Because of the delay the worker filed an application for a supplemental compensation order for post-judgment interest on the lump sum award, which the WCJ granted. *Id.* The employer appealed arguing in part that the lump sum award was not a final order to which post-judgment interest applies until expiration of the thirty day time to appeal. *Id.* ¶ 4. On appeal this Court analyzed the issue under the principles articulated in *Kelly Inn* and *Trujillo* and concluded that the partial lump sum award was a final order. *Massengill*, 2013-NMCA-103, ¶ 17. In support of its conclusion, this Court acknowledged that the employer did not contest the propriety of the lump sum award and that nothing more needed to be decided in relation to the award, nor did the employer make any arguments that the ultimate PPD determination will affect the lump sum award. *Id.*

{50} Applying the reasoning of these cases to the facts here, we are unconvinced that the fact that Worker was not at MMI at the time of the 2016 compensation order or that the order only awarded TTD benefits renders the order nonfinal for the purpose of appeal at that time. The 2016 compensation order addressed all of the issues raised in Worker's complaint, including identification of compensable injuries, except for a final determination of PPD benefits. Unlike *Kellewood*, the 2016 compensation order disposed of all questions related to compensability of Worker's injuries. Although the 2016 compensation order did not include a specific finding or conclusion as to PPD, the order did conclude that because Worker was no longer at MMI, TTD benefits were appropriate until Worker again reached MMI. Like *Massengill*, there is no indication in the record, nor does Worker assert on appeal, that she opposed the WCJ's finding that Worker was not at MMI, thus, there was nothing more to decide in relation to the TTD benefits. Further, Worker does not direct us to any underlying motions pending at the time of the 2016 compensation order that could have altered the findings and

conclusions therein, therefore, like *Gomez*, it is possible that no other proceedings would be filed until Worker reached MMI as contemplated in the order.

**{51}** Accordingly, we conclude that the 2016 compensation order was a final, appealable order from which Worker did not appeal within the appropriate period under NMSA 1978, Section 52-5-8(A) (1989). As is the case, the time for appealing issues relating to the 2016 compensation order has passed, therefore, Worker's arguments attacking the propriety of the WCJ's order vacating the 2016 trial so that an IME could be conducted are untimely and, thus, this Court does not have jurisdiction to review them. *See Singer*, 1990-NMCA-120, ¶¶ 1-5.

**CONCLUSION**

**{52}** For the reasons set out in this opinion we affirm the WCJ's findings and conclusions in the 2018 compensation order.

**{53}** **IT IS SO ORDERED.**

**JACQUELINE R. MEDINA, Judge**

**I CONCUR:**

**JANE B. YOHALEM, Judge**

**BRIANA H. ZAMORA, Judge (concurring in result only).**